# United States Court of Appeals
## For the First Circuit

No. 07-1766

COMBINED ENERGIES,

Plaintiff, Appellee,

v.

CCI, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Stahl, Senior Circuit Judges.

Ronald W. Schneider, Jr., with whom Bernstein Shur Sawyer & Nelson were on brief, for appellant.
Thomas G. Rohback, with whom James J. Reardon, LeBoeuf, Lamb, Greene & MacRae, LLP, John J. Aromando and Pierce Atwood, LLP, were on brief, for appellee.

February 1, 2008

**STAHL**, **Senior Circuit Judge**.  This lawsuit arises from a business partnership gone sour.  Plaintiff-appellee Combined Energies ("CE") filed suit in Maine federal district court against Defendant-appellant CCI, Inc. ("CCI"), alleging various contract and tort claims related to what CE describes as a raid on CE's workforce subsequent to a failed take-over attempt by its erstwhile business partner CCI.  CCI moved to stay the proceedings and compel arbitration.  The district court denied the motion and, holding that CE's claims do not fall within the scope of the parties' arbitration agreement, we affirm.

## I.  Background

CE is a Maine construction and energy services subcontractor.  CCI is an Alaskan prime contractor.  CE and CCI entered into a business relationship for the purposes of developing and performing projects for the U.S. Navy.  The business relationship was formalized in three key agreements.  The Teaming Agreement ("TA"), signed in late December 2004, established CCI as the prime contractor and CE as the subcontractor for a project proposal to be submitted to the U.S. Navy.  The TA also contemplated other Navy contract opportunities.  After the Navy accepted the proposal and awarded the contract to CCI, CCI and CE concluded a Strategic Alliance Agreement ("SAA") on August 23, 2005, a short document in which the parties stated their intention "to strategically align themselves with one another in order to

-2-

promote and utilize their respective expertise for the purpose of developing and performing projects . . . ." That same day, the parties also entered into a Purchase Order Agreement ("POA") laying out the standard terms and conditions applicable to each party's performance of the Navy contract.

It appears that the parties proceeded to perform as directed by the above triumvirate of agreements until their relationship broke down irretrievably in late 2006. CE alleges that CCI inquired about purchasing its business on October 15, 2006, an offer that CE declined. According to CE, CCI then set out to "raid what it could not buy," by "preventing CE from performing its obligations under existing contracts, preventing CE from obtaining new contracts, damaging CE's good reputation," and filching CE's entire workforce. CE was subject to a spate of mass resignations in early January 2007; the majority of the resignation letters, which are attached to CE's complaint, state that the sender had accepted or intended to accept a position with CCI.

On February 1, 2007, CE filed suit against CCI in the United States District Court for the District of Maine, alleging tortious interference with its business; unjust enrichment; breach of the TA and SAA; breach of implied covenants including the duty of good faith and fair dealing; and defamation and slander per se. Arguing that an arbitration clause in the POA mandated the submission of CE's claims to arbitration, CCI timely moved to stay

the proceedings and compel arbitration; CE opposed the motion. On March 14, 2007, the district court denied CCI's motion, finding that it could not conclude that "the arbitration clause in a construction contract encompasses a law suit alleging multiple violations of tort and contract law from the unsavory tactics CE claims CCI used in a bid to take-over its business."

Pursuant to the Federal Arbitration Act ("FAA"), this court has jurisdiction to review the district court's interlocutory order denying CCI's request for a stay and motion to compel arbitration. See 9 U.S.C. §§ 16(a)(1)(A), 16(a)(1)(B); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005).[1]

## II.  Discussion

We are not now tasked with deciding upon the merits *vel non* of CE's claims against CCI, but rather upon their

---

[1] The FAA provides that:
> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The POA containing the arbitration clause at issue here is a contract in interstate commerce because it is an agreement between Alaskan and Maine corporations to perform work for the U.S. Navy; thus, this dispute is within the purview of the FAA.

-4-

arbitrability.    "[A]rbitrability depends on contract interpretation, which is a question of law." Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50 (1st Cir. 1997)(alteration in original)(quoting PaineWebber Inc. v. Elahi, 87 F.3d 589, 592 (1st Cir. 1996))(internal quotation marks omitted). Accordingly, "[w]e evaluate the district court's denial of a motion to compel arbitration de novo." Kristian v. Comcast Corp., 446 F.3d 25, 31 (1st. Cir. 2006)(citing Campbell, 407 F.3d at 551).

When deciding a motion to compel arbitration, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 152, 155 (D. Me. 1999). Only if all three prongs of the test are satisfied will a motion to compel arbitration be granted. Here, prongs (i) and (iii) are not at issue; the outcome of this case, therefore, turns entirely on whether the dispute is of a kind that the parties had agreed to submit to arbitration.

Whether a claim falls within the reach of a particular arbitration clause is a question for the district court to determine initially as a matter of law. See Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614, 616 (1st Cir. 1975). Federal policy favors arbitration. See Mitsubishi Motors Corp. v. Soler

Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .")(internal quotations omitted). However, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes–but only those disputes–that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). CCI exhorts us that arbitration clauses must be construed liberally, while CE cautions that it cannot be compelled to arbitrate claims that it did not consent to arbitrate. At bottom, however, federal policy merely "guarantee[s] the enforcement of private contractual arrangements" by creating "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." Mitsubishi, 473 U.S. at 625 (internal quotations omitted).

Therefore, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944. Under Maine law, a contract

> is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the instrument as a whole. All parts and clauses must be considered together that it may be seen if and how far one clause is explained,

modified, limited, or controlled by the others.

Peerless Ins. Co. v. Brennan, 564 A.2d 383, 385 (Me. 1989).

In support of its argument that the parties' arbitration agreement requires arbitration of CE's claims, CCI relies on two clauses in the POA, which it contends must be read in tandem to mandate an expansive agreement to arbitrate all disputes between the parties. Paragraph 6.3 of the POA provides:

> All unresolved claims, disputes, and other matters in question between [CCI] and [CE] not relating to claims included in Paragraph 6.2[2] shall be resolved in the manner provided in Article 14.

Paragraph 14.1, the relevant provision of Article 14, states:

> All claims, disputes and matters in question arising out of, or relating to, this POA or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise.

Precedent may counsel us to construe arbitration clauses liberally, but it does not permit us to read out of an arbitration clause an explicit limit upon the scope of that clause that has been agreed to by both parties. Reading 6.3 and 14.1 together as

---

[2] Paragraph 6.2 governs POA-related claims against the Navy. We see no need to recite it verbatim here as it is not particularly relevant to this case, although we do note that even that section lays out a dispute resolution procedure only for "dispute[s] arising under this POA . . . ." (emphasis added).

Maine law requires produces not an expansive agreement to arbitrate but rather an arbitration clause clearly and on its face limited to "[a]ll claims, disputes and matters in question <u>arising out of, or relating to, this POA or the breach thereof</u> . . . ." (emphasis added).

The key question remaining, then, is whether CE's claims arise out of, or relate to, the POA or breach of the POA. CE's contract-related claims reference the TA and the SAA, not the POA; however, it is true that CE cannot avoid arbitration by dint of artful pleading alone. <u>See, e.g.</u>, <u>Acevedo Maldonado</u>, 514 F.2d at 616 (finding that arbitration clause covered "contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort"); <u>Kiefer Specialty Flooring, Inc.</u> v. <u>Tarkett, Inc.</u>, 174 F.3d 907, 910 (7th Cir. 1999)(noting that arbitrability of particular claim does not "turn on the label—'tort' or 'contract'—a party chose to affix to the claim"). Nevertheless, we agree with the district court that the complaint filed by CE cannot be fairly said to arise out of, or relate to, the POA in the sense that would be necessary to confer arbitrability in this case. As the district court observed, "[t]he Complaint does not claim any disputes between CCI and CE about the work CE performed under the POA, about payment in accordance with that work, about change orders, delay, quality of workmanship, or the myriad of other commonplace controversies between general

contractors and subcontractors."  Combined Energies v. CCI, Inc., 484 F. Supp. 2d 186, 189 (D. Me. 2007).  Indeed, as CE points out, CE existed as a business before entering into any sort of relationship with CCI and had operations apart from CCI; the gravamen of CE's allegations--that CCI set upon a course of conduct that resulted in the destruction of CE's business--reverberate far beyond the POA and would stand regardless of the parties' rights and responsibilities as defined by that contract.

CCI next argues that, at the very least, the allegations in CE's complaint that implicate the SAA must be submitted to arbitration because the SAA is incorporated into the POA and the two documents must be considered and construed as one contract.[3] See Crowe v. Bolduc, 334 F.3d 124, 137 (1st. Cir. 2003)("Under Maine law, in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purposes, and in the course of the same transaction will be considered and construed together,

---

[3] In its reply brief, CCI asserts that CE's response to this argument was cursory and should be deemed waived. See National Foreign Trade Council v. Natsios, 181 F.3d 38, 61 n.17 (1st Cir. 1999)("[A]rguments raised only in a footnote or in a perfunctory manner are waived.").  Merely because CE may have waived an argument regarding the incorporation of the SAA into the POA, however -- a matter on which we take no view -- it does not follow that CCI's argument automatically prevails.  We may affirm the district court's order "on any independent ground made manifest by the record."  Skirchak v. Dynamics Research Corp., 508 F.3d 49, 57 (1st Cir. 2007).

-9-

since they are, in the eyes of the law, one contract or instrument.")(internal quotations omitted).

CCI thus is making two conceptually distinct, although related, arguments to advocate applicability of the POA's arbitration clause to CE's SAA-related claims. See In re Olympic Mills Corp., 477 F.3d 1, 14 n.11 (1st Cir. 2007)("[The principle articulated in Crowe] is associated with but distinct from a court's consideration of a separate writing expressly incorporated by reference . . . . Compare 11 Williston on Contracts § 30:25 ('Writing Expressly Incorporated By Reference'), with id. § 30:26 ('Writing Implicitly Incorporated By Reference')."). Both are unavailing. In Crowe, we looked to two agreements executed on the same day to resolve a question of contractual ambiguity. Here, there is no comparable ambiguity. "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:6 (4th ed. 1993)(internal citations omitted). Construing the SAA and POA together does nothing to shed additional light upon an arbitration clause that is already pellucid.

We then turn to whether the POA can be read explicitly to incorporate by reference the SAA. CCI rests its assertion that the

-10-

POA incorporates the SAA on Paragraphs 2.2 and 16.3 of the POA.[4] But it is not at all clear that these clauses operate to import the SAA wholesale into the POA. It appears that the "Contract Documents" identified in Paragraph 16.3 of the POA are only listed there in order of supremacy to resolve disputes "in the event of any inconsistency" as to the work that is to be performed under the POA. It is true that Paragraph 16.3 of the POA lists the SAA as one of the "Contract Documents." However, the POA itself is listed as one of the Contract Documents, separately from the SAA--that alone belies CCI's contention that the arbitration clause's specific reference to the POA could be stretched to encompass claims relating to the SAA as well. Even if one considers the sum of the "Contract Documents" to equal the whole of the parties' agreement, the arbitration clause in Paragraph 14.1 of the POA applies specifically to disputes arising out of only one of those

---

[4] Paragraph 2.2 states, in relevant part:
    The Contract Documents, detailed in Paragraph 16.3 shall consist of the following, with the order of supremacy beginning with the first described document and ending with the last described document within that paragraph.

Paragraph 16.3, labeled "Contract Documents," lists the following:
    a) The Strategic Alliance Agreement dated _____ between CCI and Combined Energies.
    b) This POA;
    c) These POA Standard Terms and Conditions;
    d) Combined Energies' response to the Navy RFP as referenced on the POA; and
    e) Contract N62472-05-R-7510 dated 8/12/05 between the US Navy and CCI Inc.

documents: the POA. It does not state that it applies to disputes arising out of all "Contract Documents." Nowhere is it indicated that the term "POA," as used in Paragraph 14.1, is shorthand for "the POA and the SAA" or for all the "Contract Documents" combined. If the parties had intended the arbitration clause to apply to their agreement writ large or to each of the "Contract Documents" individually, it would have been as easy to state that expressly.[5] See Fit Tech, Inc. v. Bally Total Fitness, 374 F.3d 1, 9-10 (1st Cir. 2004)(rejecting argument that arbitration clause in one agreement applied to dispute arising out of another, related agreement even though former agreement was referenced in latter).

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of CCI's motion to stay and compel arbitration.

<u>Affirmed.</u>

---

[5]Since we find that the arbitration clause does not reach claims related to the SAA, we find it unnecessary to consider the question whether any of CE's claims would be within the scope of a clause that did extend to SAA-related claims.