# United States Court of Appeals
## For the First Circuit

No. 07-2754

SOURCING UNLIMITED, INC., d/b/a JUMPSOURCE,

Plaintiff, Appellee,

v.

ASIMCO INTERNATIONAL, INC. and JOHN F. PERKOWSKI,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Circuit Judge,
Merritt,* Senior Circuit Judge,
and Howard, Circuit Judge.

Victor Genecin with whom Colter L. Paulson, Squire, Sanders & Dempsey L.L.P., Craig R. Smith, Thomas A. Brown, and Fish & Richardson PC were on brief for appellants.
Keith L. Sachs with whom Florian Bruno and Metaxas, Norman & Pidgeon, LLP were on brief for appellee.

May 22, 2008

* Of the Sixth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**. This case raises the question of whether a corporate signatory to a written partnership agreement that requires international arbitration of their commercial disputes may escape arbitration of such disputes by naming as defendants two non-signatories, on the basis that there was no written agreement to arbitrate with those defendants. We hold the answer is no, and reverse the contrary decision of the district court. We remand with instructions to enter an order compelling arbitration and to dismiss the case.

I.

Plaintiff Sourcing Unlimited, Inc., d/b/a Jumpsource, is a Massachusetts corporation based in Danvers that provides mechanical parts for the U.S. commercial and industrial equipment industry. Jumpsource operates five manufacturing facilities in the United States and China; it also maintains two offices in China and contracts with other Chinese manufacturers to produce parts.

In late 2003, Jumpsource sought a larger manufacturing company to help it cope with filling high-volume contracts. Jumpsource's CEO, Michael Porter, began negotiating a business partnership with John Perkowski, Chairman and CEO of Asimco Technologies, Inc. ("ATL"), a Delaware corporation headquartered in China. Those negotiations resulted in a written partnership agreement (the "Agreement") in October 2004.

In addition to acting as Chairman and CEO of ATL, Perkowski was also Chairman of Asimco International, Inc. ("Asimco"). Asimco is a subsidiary of ATL and is based in Southfield, Michigan. It was not listed as a party to the Agreement.[1]

Under the Agreement, Jumpsource agreed to abandon certain of its manufacturing operations in China and turn them over to ATL. This freed Jumpsource to focus its efforts on sales and marketing in the United States. The Agreement listed existing and impending contracts held by Jumpsource and indicated how the companies would split profits on those contracts. The companies agreed that ATL would invoice the partnership's customers in the United States for orders received and remit payment to Jumpsource on a monthly basis. ATL agreed, for its part, "not to circumvent Jumpsource in relationships" with its existing customers. The companies further agreed to be "exclusive partner[s]" in the "U.S. Golf and Turf, Industrial Vehicle and Light Construction Markets."

The Agreement concluded with a broadly-worded arbitration clause and a complementary choice-of-law clause:

> This agreement shall be governed by, and construed in accordance with, the laws of the P.R. China, without regard to conflicts of

---

[1] "Asimco International, Inc." does not appear within the text of the Agreement. However, above the text, on the first page of the Agreement, appear the corporate logos of Jumpsource and ATL. Underneath the ATL logo is printed a Beijing address for "ASIMCO International Inc."

-3-

laws principles thereof. Any action to enforce, arising out of, or relating in any way to, any of the provisions of this agreement shall be brought in front of a P.R. China arbitration body.

The Agreement was signed by Porter and by Wilson Ni, President of ATL. The Agreement is not signed by any corporate subsidiary of ATL, nor is there the usual boilerplate language binding all corporate subsidiaries, affiliates, assigns, etc. One clause of the Agreement, however, requires Jumpsource to keep confidential "any information provided to Jumpsource by ASIMCO about ASIMCO or any ASIMCO Company and its business methods."

The business relationship soured. Jumpsource filed suit in Massachusetts Superior Court in June 2007, asserting a number of tort, contract, and statutory claims.[2] Notably, the complaint named only Asimco and Perkowski -- not ATL -- as defendants.

The complaint alleged that in addition to the written partnership Agreement between Jumpsource and ATL, Jumpsource had entered into an oral contract with Perkowski. The complaint alleged that Jumpsource and Perkowski agreed that Asimco would deliver parts produced by the Jumpsource-ATL partnership to their customers in the United States. Asimco would invoice the

_____

[2] The complaint contains claims for (1) intentional interference with the Jumpsource-ATL contractual relationship; (2) intentional interference with the Jumpsource-ATL fiduciary relationship; (3) misrepresentation; (4) breach of contract; (5) unjust enrichment; (6) breach of the implied covenant of good faith and fair dealing; and (7) a violation of the Massachusetts unfair trade practices law, Mass. Gen. Laws ch. 93A, §§ 2, 11.

customers, retain partnership profits in the United States, and split those profits with Jumpsource according to the terms of the written Jumpsource-ATL Agreement. Jumpsource alleged that the agreement with Asimco adopted the written Agreement's terms forbidding Asimco to compete with Jumpsource in certain markets. The complaint does not mention any oral agreement between Jumpsource and Asimco to arbitrate their disputes, and Jumpsource says a court must then infer that there was no such arbitration agreement.[3]

The complaint described Asimco's alleged breach of the oral contract: that Asimco inflated expenses, concealed invoices, and attempted to generate additional business from existing Jumpsource customers without informing Jumpsource. Asimco allegedly rebuffed repeated requests by Jumpsource for an accounting. When Asimco finally did provide sales figures to Jumpsource, Asimco allegedly under-reported those numbers by $1 million and blocked Jumpsource's efforts to audit ATL's operations in China. Asimco, allegedly, had paid Jumpsource a mere $125,000 in spite of invoicing the Jumpsource-ATL partnership's customers close to $4 million.

---

[3] It is not clear from the complaint in what capacity Perkowski entered this contract, whether as Chairman and CEO of ATL or as Chairman of Asimco. Earlier, the complaint alleged that Perkowski proposed the Jumpsource-ATL partnership, although the complaint does not mention Perkowski's position at ATL. Further, the complaint alleges that ATL is Asimco's subsidiary, but in fact the opposite is true.

Defendants Asimco and Perkowski removed the case to the U.S. District Court in Massachusetts on diversity grounds. Defendants then filed motions to dismiss. Asimco's motion, in addition to arguing that the complaint failed to state valid claims, cited Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, as a basis for dismissal "in favor of arbitration." Asimco Int'l, Inc.'s Mot. to Dismiss at 18, Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., No. 07-cv-11321 (D. Mass. Aug. 31, 2007).

That citation was significant. Chapter 2 of the FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Sept. 30, 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997, reprinted at 9 U.S.C.A. § 201, at 511 (West 1999) [hereinafter New York Convention]. Chapter 2 governs how U.S. courts treat agreements to arbitrate international commercial disputes. Asimco's motion argued that the arbitration clause in the Jumpsource-ATL contract was subject to Chapter 2 and the New York Convention because (1) there was a written arbitration agreement; (2) the agreement provided for arbitration in the territory of a signatory to the Convention; (3) the agreement arose in a commercial relationship; and (4) the commercial relationship is related with a foreign state. Cf. DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 74 n.2 (1st Cir. 2000) (outlining appropriate inquiry for applicability of Chapter 2). Jumpsource

-6-

has not disputed that the arbitration clause in the Jumpsource-ATL Agreement is subject to the New York Convention and Chapter 2 of the FAA.

Asimco's motion to dismiss characterized the oral agreement between Jumpsource and Perkowski as a modification of the Jumpsource-ATL Agreement, not a stand-alone contract.[4]

Asimco argued that Jumpsource should not be permitted to evade its obligation to arbitrate under the Jumpsource-ATL contract by suing a non-signatory subsidiary and a corporate officer of ATL for matters that all clearly arise from the Agreement. Asimco framed its argument in terms of equitable estoppel, noting that the issues Jumpsource sought to litigate "are intertwined with the agreement that [Jumpsource] has signed." As such, Asimco requested that Jumpsource's complaint "be dismissed in favor of arbitration" in China.

Jumpsource responded that its claims derive not from the Jumpsource-ATL Agreement, but from the separate oral contract between Jumpsource and Asimco. That oral contract, unlike the Jumpsource-ATL contract, did not contain any agreement to arbitrate. Jumpsource denied that estoppel provided grounds for Asimco, as a non-signatory, to invoke a right to arbitrate under the Jumpsource-ATL partnership Agreement.

---

[4] Asimco also contended that the oral agreement was unenforceable under the Massachusetts Statute of Frauds. That is not of concern in this appeal.

On November 6, 2007, the district court issued a summary order that, in relevant part, stated the following:

> The Motion to Dismiss . . . on the ground that arbitration must take place in China is DENIED. [Jumpsource] is not a party to any such contract with ASIMCO.

Order, Sourcing Unlimited, No. 07-cv-11321 (D. Mass. Nov. 6, 2007). The district court gave no reasons to support its ruling other than that Jumpsource had not signed an arbitration agreement with Asimco. The net effect of the district court order is to deny arbitration and allow the merits of the dispute to proceed in the district court.

II.

A.      Appellate Jurisdiction

Jumpsource has moved to dismiss this interlocutory appeal for lack of appellate jurisdiction. Jumpsource's primary contention is that appellate jurisdiction is lacking because Asimco is not a signatory to a written arbitration agreement. We reject the argument and hold that we have jurisdiction.

The FAA, through 9 U.S.C. § 16(a)(1), creates three explicit statutory exceptions to the ordinary rule against interlocutory appeals. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005).[5] The FAA authorizes

---

[5]      Otherwise, "[i]n the absence of special circumstances, interlocutory orders are not immediately appealable." Campbell, 407 F.3d at 550.

-8-

interlocutory appeals from district court orders disfavoring arbitration:

> An appeal may be taken from –
> (1) an order --
>    (A) refusing a stay of any action under [9 U.S.C. § 3],
>    (B) denying a petition under [9 U.S.C. § 4] to order arbitration to proceed,
>    (C) denying an application under [9 U.S.C. § 206] to compel arbitration . . . .

9 U.S.C. § 16(a).  Congress enacted the FAA to implement "the national policy favoring arbitration" and "[t]o overcome judicial resistance to arbitration."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).  Section 16 effectuates those purposes.

Section 16(a)(1), by authorizing interlocutory appeals of district court orders that frustrate attempts to resolve disputes through arbitration, ensures that parties to enforceable arbitration agreements do not have to endure unnecessary federal court litigation before their rights under their agreements are vindicated.  See generally D. Siegel, Practice Commentary: Appeals from Arbitrability Determinations, 9 U.S.C.A. § 16, at 494 (West 1999).  By contrast, the FAA expressly precludes interlocutory appeals from orders favoring arbitration.  9 U.S.C. § 16(b).

It is the third category of appealable interlocutory orders, defined in § 16(a)(1)(C), that is relevant here.  The FAA, in 9 U.S.C. § 206, authorizes federal courts to compel international arbitration according to agreements subject to the

-9-

New York Convention. See id. § 206. Section 16(a)(1)(C), in turn, allows interlocutory appeals of orders refusing to compel arbitration under § 206.

Our precedent disfavors Jumpsource's argument that we lack jurisdiction under § 16(a)(1)(C) where the party requesting arbitration is not a signatory to the arbitration agreement at issue. In InterGen N.V. v. Grina, 344 F.3d 134 (1st Cir. 2003), this court reviewed a district court order denying a motion to compel arbitration proceedings in London. Id. at 140. Neither the party seeking to compel arbitration nor the party resisting arbitration were signatories to a written arbitration agreement. Id. at 143. This court, citing 9 U.S.C. § 16(a)(1)(C), held that "[a] party has the right to appeal immediately from an order denying a motion to compel arbitration." Id. at 140. Only after asserting jurisdiction did the InterGen court proceed to evaluate the merits of the arbitrability issue. It is also true, though, that there was no dispute between the parties in InterGen that there was appellate jurisdiction under § 16(a)(1)(C), nor was there extensive discussion of the issue.

On that basis, Jumpsource urges this court to adopt the rule of two sister circuits that reject interlocutory appeals, taken under different provisions of § 16(a)(1), from orders denying motions to compel domestic arbitration when the parties are not signatories to a written arbitration agreement. Jumpsource relies

on In re Universal Service Fund Telephone Billing Practice Litigation, 428 F.3d 940 (10th Cir. 2005) [hereinafter USF], and on DSMC Inc. v. Convera Corp., 349 F.3d 679 (D.C. Cir. 2003). Those decisions also hold that a theory that a non-signatory to a domestic arbitration agreement may bind a party to arbitrate by equitable estoppel is insufficient to create jurisdiction under § 16(a)(1)(A) or (B). See DSMC, 349 F.3d at 683-85. In appeals from denials of motions to stay litigation or compel domestic arbitration under § 16(a)(1)(A) or (B), there is a circuit split on this question of appellate jurisdiction.[6] Because we find the reasoning of DSMC and USF inapposite to appeals under § 16(a)(1)(C), we do not otherwise speak to this apparent disagreement.

Significantly, this appeal concerns an agreement to arbitrate an international commercial dispute, which is subject to

---

[6] The Sixth Circuit has recently joined the Tenth and D.C. Circuits in holding that a non-signatory to a written agreement to arbitrate domestic disputes may not appeal under § 16(a)(1). See Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP, 521 F.3d 597, 599-602 (6th Cir. 2008) (adopting DSMC in context of appeal under § 16(a)(1)(A)). The Second Circuit has expressly repudiated the rule in a case under § 16(a)(1)(B). See Ross v. Am. Express Co., 478 F.3d 96, 99-100 & n.2 (2d Cir. 2007) (rejecting rule of USF and DSMC). Several other circuits, including our own, have also exercised jurisdiction over interlocutory appeals under § 16(a)(1)(A) or (B) where one or more party to the dispute was arguably not a signatory to a written arbitration agreement. See, e.g., Becker v. Davis, 491 F.3d 1292, 1296-97 (11th Cir. 2007); McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994). See also May v. Higbee Co., 372 F.3d 757, 762 & n.8 (5th Cir. 2004) (noting varying decisions within circuit).

-11-

the New York Convention and Chapter 2 of the FAA. It thus falls into a different category than the USF and DSMC cases, which involved domestic arbitration agreements governed by Chapter 1 of the FAA, 9 U.S.C. §§ 1-16. The D.C. Circuit in DSMC relied heavily on the language of 9 U.S.C. § 4, which authorizes district courts to compel domestic arbitration upon the motion of a "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration." The D.C. Circuit reasoned that this language applied only to a signatory's failure to arbitrate "under a written agreement for arbitration," and "not an alleged failure to arbitrate when principles of equitable estoppel indicate that you should." DSMC, 349 F.3d at 683.

In contrast, Chapter 2 of the FAA employs broader statutory language than does Chapter 1. The Chapter 2 provision authorizing district courts to compel international arbitration reads, "A court . . . may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. Another section in Chapter 2, which specifies the requirements for an arbitration agreement to fall under the Convention, states:

> An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in [9 U.S.C. § 2], falls under the Convention. An agreement . . .

-12-

arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship . . . has some . . . reasonable relation with one or more foreign states.

9 U.S.C. § 202.  We do not read anything in the language of Chapter 2 to suggest that a party seeking an appeal from an order denying international arbitration must have signed a written arbitration agreement firsthand.[7]  The statutory text does not preclude an appeal under § 16(a)(1)(C) based on an estoppel theory, such as the one presented here.

Furthermore, the national policy favoring arbitration has extra force when international arbitration is at issue.  See Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 220-21 (1st Cir. 1995); see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991) ("The policy in favor of arbitration is even stronger in the context of international business transactions.").  As the Supreme Court has stated, "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the

---

[7]     The Convention does require some writing to render an arbitration agreement enforceable.  Article II of the Convention contemplates "an agreement in writing" as a prerequisite to recognizing an arbitration agreement under the treaty. Here, it is undisputed that there is a writing.  That is a separate issue, however, from whether 9 U.S.C. § 16(a)(1)(C) allows interlocutory appeals by non-signatories to such a written agreement.

-13-

resolution of disputes" weigh in favor of enforcing arbitration agreements subject to the New York Convention.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985); see also Scherk v. Alberto-Culver Co., 417 U.S. 506, 516 (1974) ("A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.").

To erect a bright-line rule that this court lacks jurisdiction to review appeals taken under § 16(a)(1)(C) from denials of international arbitration unless all parties to the dispute are signatories to a written arbitration agreement would insulate a whole class of denials of motions to compel arbitration from review until after the litigation has run its course.[8]  Such a rule would contravene the courts' obligation to enforce arbitration agreements under the New York Convention and Chapter 2 of the FAA.  InterGen, 344 F.3d at 142.

---

[8]     Courts routinely recognize that arbitration agreements may require arbitration even where all parties to the dispute did not sign the arbitration agreement. See, e.g., Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir. 2005) (recognizing that non-signatories may be bound to arbitrate through doctrines of assumption, agency, estoppel, veil piercing, and incorporation by reference). Even the Tenth and D.C. Circuits have left open the possibility that a court could properly compel signatories to arbitration agreements to arbitrate with non-signatories. USF, 428 F.3d at 945; DSMC, 349 F.3d at 683.

A final jurisdictional argument by Jumpsource warrants brief comment. Jumpsource argues that jurisdiction is not proper under § 16(a)(1)(C) because defendants sought dismissal of the case rather than labeling their motion as one "under section 206 . . . to compel arbitration." 9 U.S.C. § 16(a)(1)(C). This elevates a label over substance. The record shows that everyone, including the district court, viewed this motion as one seeking to compel arbitration, and defendants argued that if arbitration was compelled, the case should be dismissed. A movant's choice to request dismissal rather than a stay of proceedings during referral to arbitration is within the ambit of § 16(a). Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 5-6 (1st Cir. 2004). Asimco's motion clearly cited to Chapter 2 of the FAA and requested dismissal "in favor of arbitration." The district court's comments during the hearing on the motion show that the court interpreted the motion as requesting an order compelling arbitration. The district court's order framed the motion to dismiss as based "on the ground that arbitration must take place in China." Jumpsource was not misled by Asimco's invocation of the arbitration agreement within a motion to dismiss. Cf. id. at 6.

This court has jurisdiction to review defendants' appeal under 9 U.S.C. § 16(a)(1)(C). We next turn to the question of whether the district court erred in denying the motion to compel arbitration.

-15-

B.        <u>Should the Matter Have Been Sent to Arbitration?</u>

Because the district court's order denying the motion to compel arbitration did not rely on any factual findings meriting deference, we treat its decision as one of law and review the order de novo. <u>Campbell</u>, 407 F.3d at 551; <u>InterGen</u>, 344 F.3d at 141. In the absence of any contention from the parties to the contrary, we apply federal common law to resolve the issues. <u>InterGen</u>, 344 F.3d at 143.

The context of the case is significant. The party who is a signatory to the written agreement requiring arbitration is the party seeking to avoid arbitration. "A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." <u>Id.</u> at 142. Defendants argue that although Asimco did not sign an arbitration agreement, Jumpsource bound itself to arbitrate claims of this nature by virtue of the arbitration clause in the Jumpsource-ATL Agreement and is estopped from litigating claims against Asimco that essentially arise from the terms of the Jumpsource-ATL contract.

Equitable estoppel "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." <u>Id.</u> at 145. Federal courts

-16-

"have been willing to estop a <u>signatory</u> from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." <u>Id.</u> (quoting <u>Thomson-CSF, S.A.</u> v. <u>Am. Arbitration Ass'n</u>, 64 F.3d 773, 779 (2d Cir. 1995)) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Sunkist Soft Drinks, Inc.</u> v. <u>Sunkist Growers, Inc.</u>, 10 F.3d 753, 757-58 (11th Cir. 1993) (estopping signatory from avoiding arbitration with nonsignatory); <u>Deloitte Noraudit A/S</u> v. <u>Deloitte Haskins & Sells, U.S.</u>, 9 F.3d 1060, 1063-64 (2d Cir. 1993) (applying estoppel to bind nonsignatory to arbitrate international dispute); <u>J.J. Ryan & Sons, Inc.</u> v. <u>Rhone Poulenc Textile, S.A.</u>, 863 F.2d 315, 320-21 (4th Cir. 1988) (referring nonsignatory parent, along with signatory subsidiary, to international arbitration).

There is no real issue in this case about whether the subject matter of the suit is intertwined with the subject matter within the scope of the arbitration clause. The analysis turns on the defendants allegedly not having executed a written agreement to arbitrate.

The present dispute is sufficiently intertwined with the Jumpsource-ATL Agreement for application of estoppel to be appropriate. On these facts, there is no need to explore further what is required to show intertwining. Most of Jumpsource's claims either directly or indirectly invoke the terms of the Jumpsource-

ATL Agreement. Counts one and two of Jumpsource's complaint charge Asimco with intentional interference with contractual and fiduciary relationships between Jumpsource and ATL. Count three recites statements that Perkowski allegedly made to Jumpsource in the course of negotiating the Agreement between ATL and Jumpsource as the basis for a claim of misrepresentation.

Even if there were an enforceable oral contract between Jumpsource and Asimco -- an issue for the arbitrator -- that contract would still require reference to and be in part based on the underlying Jumpsource-ATL Agreement. Cf. In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002); rev'd on other grounds sub nom PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401 (2003) ("The [signatory] plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel [against the plaintiff]."). As alleged by Jumpsource, the side oral contract with Asimco explicitly contemplated remitting profits to Jumpsource in accordance with the terms of the Jumpsource-ATL Agreement. The side oral contract also allegedly reiterated the Agreement's non-compete and exclusivity clauses. The only term in the side contract that added anything to the existing arrangement between Jumpsource and ATL was Asimco's assumption of ATL's duties to invoice the partnership's customers and remit profits to

Jumpsource.  If the Jumpsource-ATL Agreement were to become void, Asimco's contractual obligations under the side contract would be meaningless.

The fact that the defendants are not signatories is not a basis on which arbitration may be denied.  Jumpsource is equitably estopped.  Jumpsource is bound by a written agreement to arbitrate in China "[a]ny action to enforce, arising out of, or relating in any way to, any of the provisions" of the Jumpsource-ATL Agreement.  All of Jumpsource's claims against Asimco ultimately derive from benefits it alleges are due it under the partnership Agreement.  Jumpsource must seek redress through arbitration in accordance with the terms of the arbitral clause in the Agreement.  Given the history of this case and the delay occasioned, dismissal of the underlying complaint is appropriate. There is no basis for the district court to supervise an arbitration which will occur in China.

The order of the district court is reversed and remanded with instructions to grant the motion to compel arbitration and dismiss the action.