**CAGUAS SATELLITE CORP., and José Seda Chico, Plaintiffs,**

v.

**ECHOSTAR SATELLITE LLC, Dish Network Corporation, Dish Network LLC, Jane Doe, John Doe, ABC Corporation, and XYZ Corporation, Defendants.**

Civil No. 11–1071(FAB).

United States District Court,
D. Puerto Rico.

Nov. 8, 2011.

Nicolas Nogueras–Cartagena, Nicolas Nogueras Law Offices, Huarali Reyes–Aviles, San Juan, PR, for Plaintiffs.

Christian M. Echavarri–Junco, O'Neill & Borges, San Juan, PR, Richard R. Olsen, The Olsen Law Firm, P.C., Houston, TX, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants DISH Network Corporation and DISH Network L.L.C. f/k/a EchoStar Satellite L.L.C's "Motion to Compel Arbitration." (Docket No. 9.) For the reasons set forth below, defendants' motion to compel arbitration is **GRANTED,** and defendants' motion to dismiss the action rather than stay the proceedings pending arbitration is also **GRANTED.**

### I.  Background

Plaintiff Caguas Satellite Corporation ("Caguas Satellite") is a closely held corporation organized under the laws of the Commonwealth of Puerto Rico. (Docket No. 1 at 2, ¶ 3.) Plaintiff Caguas Satellite's president, sole shareholder, and proprietor is plaintiff José Seda Chico ("Chico"). (Docket No. 1 at 2, ¶ 4.) Defendants DISH Network Corporation and its subsidiary, DISH Network L.L.C. f/k/a EchoStar Satellite L.L.C. (collectively, "DISH") are incorporated and have their principal offices in Engelwood, Colorado. (Docket No. 1 at 2, ¶¶ 5–7.) In 2003, plaintiff Caguas Satellite entered into a contract with defendants DISH to market and install equipment for individual consumers to receive satellite television transmissions broadcast by DISH Network. (Docket No. 1 at 2, ¶ 9.) Specifically, plaintiff Chico agreed to the terms and conditions of defendants DISH's Network Distributor Retailer Agreement (the "Retailer Agreement") on behalf of plaintiff Caguas Satellite. (Docket No. 9 at 1.) The parties renewed the Retailer Agreement in 2004, 2006, and 2007. (Docket No. 21–1.)

In 2008, defendants DISH allegedly discovered that plaintiffs Chico and Caguas Satellite were involved with the installation of illegal, modified or counterfeit equipment that allowed customers to steal the

DISH satellite signal. (Docket No. 1 at 2, ¶ 19; Docket No. 9 at 1.) Therefore, on November 5, 2008, defendants DISH notified plaintiffs Chico and Caguas Satellite that they were terminating the Retailer Agreement that became effective on December 31, 2007. (Docket No. 1 at 2, ¶ 9; Docket No. 18 at 3, ¶ 9.) On March 5, 2009, defendants DISH published a press release on its website that announced the termination of certain retailers, including plaintiff Caguas Satellite, for engaging in illegal activity when establishing DISH Network service accounts with customers. (Docket No. 1 at 5, ¶ 26.)

On January 21, 2011, plaintiffs Chico and Caguas Satellite filed a complaint alleging (1) that defendants DISH's actions constitute defamation and slander under Puerto Rico's Libel and Slander Act of 1902 (P.R. Laws Ann. tit. 32 § 3142); (2) that defendant DISH's actions were taken negligently in violation of Article 1802 of the Puerto Rico Civil Code (P.R. Laws Ann. tit. 31 § 5141) and Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; (3) that plaintiff Chico suffered personal damages as a result of defendants DISH's March 5, 2009 dissemination; (4) that defendants DISH unlawfully terminated the Retailer Agreement with plaintiffs Chico and Caguas Satellite under Puerto Rico Law 75 (P.R. Laws Ann. tit. 10, § 278). (Docket No. 1 at 5–9.)

On March 24, 2011, defendants DISH filed a motion to compel arbitration. (Docket No. 9.) Defendants DISH also attached an unsigned document titled "Echo Star Satellite L.L.C. Distributor Retailer Agreement" to their motion to compel arbitration. (Docket No. 9–1.) Section 15.3 of the document is titled "Arbitration" and provides that:

"Any and all disputes, controversies or claims arising out of or in connection with this Agreement, including but not limited to the validity of this Section 15, the circumstances concerning the execution and delivery of this Agreement (whether via signature or electronic acceptance), and any allegations of fraud in the inducement, or which relate to the parties' relationship with each other or either party's compliance with any Laws, which are not settled through negotiation ... or the mediation process ... shall be resolved solely and exclusively by binding arbitration." *Id.* at 16–17.

On May 11, 2011 plaintiffs Chico and Caguas Satellite filed a motion to produce documents, requesting that the Court compel defendants DISH to produce for the record a copy of the signed Retailer Agreement containing the valid arbitration clause. (Docket No. 16.) The Court denied that motion without prejudice and referred plaintiffs Chico and Caguas Satellite to Local Rule 26(b), which requires plaintiffs to show that they have made a good faith attempt to resolve the issue with opposing counsel. (Docket No. 17.)

On May 13, 2011, plaintiffs Chico and Caguas Satellite filed a motion for reconsideration of its motion to produce documents and a reply/opposition to defendants DISH's motion to compel arbitration. (Docket No. 18.) The Court denied plaintiffs Chico and Caguas Satellite's motion for reconsideration for failure to comply with Local Rule 26(b). (Docket No. 19.)

On May 19, 2011, defendants DISH filed a reply to plaintiffs Chico and Caguas Satellite's response to motion to compel. (Docket No. 21.) Defendants DISH also attached a Contract History Report to its reply. (Docket No. 21–1.)

## II. Discussion

### A. Legal Standard for Order Compelling Arbitration

■ The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), establishes the

validity and enforceability of written arbitration agreements. The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district courts' discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims and thereby forgo a judicial remedy for those claims. *McCarthy v. Azure*, 22 F.3d 351, 354–55 (1st Cir.1994) (internal citations omitted). Therefore, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *AT & T Technologies, Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■ Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements [1] that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir.2003).

Plaintiffs Chico and Caguas Satellite and defendants DISH disagree on prongs (1), (3), and (4). The Court will consider each argument in turn.

## B. Analysis
### i. A Valid Arbitration Agreement Must Exist

Plaintiffs Chico and Caguas Satellite argue that no valid arbitration agreement exists because defendants have not produced a valid signed Retailer Agreement. (Docket No. 18 at 5, ¶ 25.) Defendants DISH assert that Plaintiffs Chico and Caguas Satellite electronically accepted the terms and conditions of the Retailer Agreement. (Docket No. 21 at 3–4.) Defendants DISH contend that the federal Electronic Signatures in Global and National Commerce Act (the "E–Sign Act"), 15 U.S.C. § 7001(a)(2), provides that contracts relating to interstate commerce [2]

---

**1.** At least one other First Circuit Court of Appeals case has stated that only three requirements are required for a court to compel arbitration. *See Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir.2008). These three requirements are: (1) a written agreement to arbitrate exists, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration. *Id.* (citing *Bangor Hydro–Electric Co. v. New England Tel. & Tel. Co.*, 62 F.Supp.2d 152, 155 (D.Me.1999)). The four requirements of the *InterGen N.V.* test include the three re-

quirements discussed in *Combined Energies*. Furthermore, the First Circuit Court of Appeals still uses the *InterGen N.V.* test. *See e.g., Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir.2011). Thus, the Court will analyze the motion to compel arbitration under the more restrictive *InterGen N.V.* test even though both the plaintiffs and defendants make their arguments under the three requirements of *Combined Energies*.

**2.** Defendants DISH assert that this Retailer Agreement is within the purview of the FAA because it involves interstate commerce.

"may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." (Docket No. 21 at 3.)

■ State contract law governs the validity of an arbitration agreement under the first prong of the *InterGen N.V.* test. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir.2005). Under Puerto Rico law, the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation. P.R. Laws Ann. tit. 31, § 3391. Under Puerto Rico law, consent of a party is invalid only if "given by error, under violence, by intimidation, or deceit." P.R. Laws. Ann. Tit. 31, § 3404; *Sanchez–Santiago v. Guess, Inc.*, 512 F.Supp.2d 75, 79 (D.P.R.2007). Furthermore, in 2006, Puerto Rico enacted its own Electronic Transactions Act ("ETA") to supplement the federal E–Sign Act. P.R. Laws Ann. tit. 10, §§ 4081–4096. Similar to the federal E–Sign Act, the Puerto Rico ETA provides that "no legal effect or validity shall be denied to any electronic documents [sic] or signatures [sic] solely because they are in electronic form." *Id.* at § 4086(a). The Puerto Rico ETA also provides that "no legal effect or validity shall be denied to a contract because an electronic document was used in its formation." *Id.* at § 4086(b).

Plaintiffs Chico and Caguas Satellite argue only that defendants DISH have failed to prove the first element of a valid agreement to arbitrate under Puerto Rican law. They state that there is no consent of the contracting parties because defendants DISH have not produced a valid signed document. (Docket No. 18 at 5–6, ¶¶ 25–28). Plaintiffs Chico and Caguas make no arguments as to the second or third elements of a valid contract under Puerto Rico law. *Id.*

■ Plaintiff Caguas Satellite has failed to prove its lack of consent to the contract. Two different sections of the Retailer Agreement—Section 3.2 and the signature page-expressly provide for electronic acceptance of the agreement.[3] (Docket No. 9–1 at 6 and 24.) Also, defendants DISH have provided a Contract History Report that shows when and how Caguas Satellite electronically accepted the terms and conditions of the Retailer Agreement in 2007, making the Retail Agreement effective between December 31, 2007 to December 31, 2009. (Docket No. 21–1.) Plaintiff Caguas Satellite has not claimed the existence of error, violence, intimidation, or deceit that would invalidate its consent to the terms of the Retailer Agreement. Therefore, under Puerto Rico law, a valid contract to arbitrate exists between plaintiff Caguas Satellite and defendants DISH.

■ Furthermore, equitable estoppel precludes plaintiffs Chico and Caguas Satellite from enjoying rights and benefits under a contract while at the same time

(Docket No. 9 at 4–5.) Plaintiffs Chico and Caguas Satellite, however, do not make any arguments about whether or not the agreement involves interstate commerce and therefore waive this argument.

3. Section 3.2 of the Retailer Agreement provides that "[e]ach party hereto represents and warrants that the signature of its duly authorized representative below or its *electronic acceptance* of this Agreement, as applicable, is genuine and that the person signing or *elec-tronically accepting* this Agreement on behalf of such party is authorized by such party to sign and/or *electronically accept* this Agreement on its behalf" (emphasis added). (Docket No. 9–1 at 6.) Likewise, the signature page of the Retailer Agreement expressly provides that "the parties have signed and/or *electronically accepted* this Agreement by their authorized representatives as of the date first written above" (emphasis added). (Docket No. 9–1 at 24.)

avoiding its burdens and obligations. *Sourcing Unlimited, Inc. v. ASIMCO Int'l, Inc.*, 526 F.3d 38, 47 (1st Cir.2008). Plaintiffs Chico and Caguas Satellite are asserting their claims for damages before the Court as a result of the Retailer Agreement and at the same time contradictorily asserting that the contract does not exist in order to avoid arbitration. (Docket No. 1 at 2, ¶ 9; Docket No. 18 at 5–6, ¶¶ 25–28.) This would "both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Avila Group, Inc. v. Norma J. of Cal.*, 426 F.Supp. 537, 542 n. 16 (S.D.N.Y. 1977) (citing 9 U.S.C. § 2; H.R.Rep. No. 96, 68th Cong., 1st Sess. (1923)). Thus, plaintiffs are equitably estopped from claiming that the contract does not exist and defendants DISH have established the existence of a valid arbitration agreement. Therefore, defendants DISH have met the first *InterGen N.V.* requirement.

## ii. Moving Party Must be Entitled to Invoke Arbitration Clause

The second requirement of the *InterGen N.V.* test is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision. *See InterGen N.V.*, 344 F.3d at 143. In this case, defendants DISH are parties to the Retailer Agreement electronically signed by plaintiff Chico on behalf of plaintiff Caguas Satellite. (Docket No. 21–1.) Therefore, Defendants DISH can properly invoke the agreement's arbitration provision. (Docket No. 9–1 at 1.)

## iii. Other Party Must Be Bound By Clause

The third requirement is satisfied if the party against whom the moving party seeks to enforce the arbitration agreement is a party to the agreement. *See InterGen N.V.*, 344 F.3d at 143. In this case, plaintiff Chico electronically accepted the terms and conditions of the Retailer Agreement on behalf of Caguas Satellite on November 17, 2007. (Docket No. 21–1.) By electronically accepting the terms and conditions of the Retailer Agreement, plaintiff Caguas Satellite agreed to the arbitration provision and is therefore bound by its terms.[4]

## iv. Claims Must Fall Within Scope of Arbitration Agreement

■ The last inquiry is whether plaintiffs Chico and Caguas Satellite's claims against defendants DISH fall within the scope of the arbitration agreement. *See InterGen N.V.*, 344 F.3d at 142. Given the preference for arbitration embodied in the FAA, the Supreme Court has recognized that arbitration clauses should be interpreted broadly. *See e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . .")(internal quotations omitted). An order to "arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650, 106 S.Ct. 1415.

---

4. Plaintiff Chico also asserts that he suffered personal damages as a result of defendants DISH's March 5, 2009 dissemination regarding their termination of the Retailer Agreement with Caguas Satellite. Plaintiff Chico stated that he was "doing business as 'Caguas Satellite'" and was serving in his capacity as president when he agreed to the terms of the Retailer Agreement with defendants DISH. (Docket No. 18 at 2, ¶ 1.) Therefore, he is also bound by the arbitration clause for claims relating to actions that he took in his representative capacity.

The First Circuit Court of Appeals has held consistently that broad arbitration clauses are not limited only to disputes over the terms of the contract or to disputes arising during the performance of the contract. *See e.g., Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir.1975) (finding that broad language like "any controversy or claim arising out of or relating to [an] Agreement or the breach thereof" covers "contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort"). Other circuit courts and courts in this district also apply a strong presumption in favor of arbitration when there is broad all-encompassing language in arbitration clauses. *See Dialysis Access Center, LLC v. RMS Lifeline, Inc.,* 638 F.3d 367, 381–82 (1st Cir.2011) (discussing how several circuits have recognized that phrases like 'arising under' and 'arising out of' should be interpreted broadly in favor of arbitration); *see also Carro Rivera v. Parade of Toys, Inc.,* 950 F.Supp. 449, 452 (D.P.R. 1996) (discussing how broad clauses "have been held to encompass a variety of extra-contractual claims").

■ All of plaintiffs Chico and Caguas Satellite's claims "arise under" or "relate to" the Retailer Agreement that contains the broad arbitration clause. They state that the causes of action for plaintiff Caguas Satellite are "defamation, slander and damages resulting from the negligent ac-

tion" of defendants DISH's March 5, 2009 press release.[5] (Docket No. 18 at 9, ¶ 41.) The press release states that DISH Network terminated some of its retailers, including plaintiff Caguas Satellite, for alleged illegal activity when establishing DISH Network service accounts with customers. *Id.* at 9, ¶ 12. These statements relate directly to the ending of the Retailer Agreement. Moreover, plaintiffs Chico and Caguas Satellite assert that defendants DISH unlawfully terminated the Retailer Agreement with them under Puerto Rico's Law 75 (P.R. Laws. Ann. tit. 10 § 278). (Docket No. 1.) But for the existence of the contract, plaintiffs Chico and Caguas would not have been able to bring their claims for damages. *Cf. Acevedo,* 514 F.2d at 616 (discussing how "absent the contracts, there would no occasion for a third-party claim" where third-party plaintiffs sought contribution from third-party defendants).

### a. Applying the Arbitration Provision After the Retailer Agreement Ended

The Court must next consider whether the Retailer Agreement's arbitration clause survived the termination of the contract in November 2008. (Docket No. 18 at 8, ¶ 37.) In support of their argument that their claims do not fall within the scope of the arbitration agreement, plaintiffs Chico and Caguas Satellite assert that

---

5. As mentioned above, plaintiff Chico also asserts that he suffered personal damages as a result of defendants DISH's March 5, 2009 dissemination regarding their termination of the Retailer Agreement with Caguas Satellite. (Docket No. 1 at 7, ¶¶ 41–43.) In order for plaintiff Chico to state a claim, the defamatory statement must be 'specifically of and concerning' the plaintiff. *Flamand v. Am. Int'l Group, Inc.,* 876 F.Supp. 356, 372 (D.P.R. 1994) (citing *Flotech, Inc. v. E.I. DuPont de Nemours & Co.,* 814 F.2d 775, 778 n. 3 (1st Cir.1987)). Plaintiff Chico alleges only that

the dissemination concerned Caguas Satellite's activities and not "specifically of and concerning" plaintiff Chico. (Docket No. 1 at 7, ¶ 41.) Thus, this Court finds that plaintiff Chico has failed to state a personal claim for defamation based on a dissemination about his company. This claim, even if properly stated, however, would still be within the scope of arbitration because the statements in the dissemination "arise under" or "relate to" the Retailer Agreement that contains the broad arbitration clause.

defendants DISH's actions took place after the business relationship was over. (Docket 18, at 7, ¶ 35.) Thus, they argue that permitting this matter to be adjudicated by arbitration would be to "extend the enforceability of said contract way beyond its scope." (Docket No. 18 at 7, ¶ 39.) The Supreme Court has found, however, that as long as the disputes arise from the contract, there is a presumption in favor of post-expiration arbitration of matters unless negated expressly or by clear implication. *Nolde Bros., Inc. v. Local No. 358,* 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977).

Based on this principle, the First Circuit Court of Appeals has imposed a two-prong analysis for post-expiration arbitrability of disputes. *South Bay Boston Mgmt. v. Unite Here, Local 26,* 587 F.3d 35, 43 (1st Cir.2009). The Court must determine (1) if the particular dispute has its real source in the contract, and if so, (2) whether post-expiration arbitration of the issue was negated expressly or by clear implication. *UPS v. Union De Tronquistas,* 426 F.3d 470, 473 (1st Cir.2005) (internal citations omitted).

Both prongs are satisfied here. First, as stated above, the parties' dispute stems from the terms and conditions of the Retailer Agreement. Second, the Retailer Agreement does not negate post-expiration arbitration expressly or by clear implication. Rather, Section 15.6 of the Retailer Agreement expressly provides for the survival of the arbitration provisions after expiration or termination of the agreement.[6] (Docket No. 9-1 at 18, § 15.6.) Therefore, plaintiffs Chico and Caguas Satellite's argument that the arbitration clause did not survive after the termination of the Retailer Agreement fails. The arbitration clause remains in force and is applicable to their claims against defendants DISH.

## C. Dismissal of Action Rather than Stay the Proceedings Pending Arbitration

As a final matter, the Court must decide whether to dismiss plaintiff Chico and Caguas Satellite's action rather than stay the proceedings. Under the FAA, if suit is brought in a United States Court with regards to a claim that should be referred to arbitration, the Court must, upon request by one of the parties, stay the action until arbitration has concluded. 9 U.S.C. § 3. Where a court determines that all claims raised by the plaintiff are subject to arbitration, the court may dismiss the entire action, rather than staying it. *See Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 156 n. 21 (1st Cir.1998) (a court may "dismiss, rather than stay, a case when all of the issues before the court are arbitrable"); *Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.,* 636 F.Supp. 750, 757–58 (D.P.R.1986) ("Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."). The Court finds that all of the claims asserted by plaintiffs Chico and Caguas Satellite are arbitrable and must be submitted to arbitration. Thus, the appropriate procedure is dismissal of the action.

## III. Conclusion

For the reasons expressed, the Court **GRANTS** defendants DISH's motion to compel arbitration and **GRANTS** defendants' motion to dismiss the case, with prejudice, instead of staying it until arbi-

---

6. Specifically, Section 15.6 of the Retailer Agreement states: *"Survival.* The provisions of this Section 15 [containing the arbitration clause] shall survive expiration or termination of this Agreement (for any reason or no reason whatsoever) indefinitely."

tration has concluded. Judgment shall be entered accordingly.

IT IS SO ORDERED.