# United States Court of Appeals
## For the First Circuit

No. 18-1286

PARADISE HOGAN,
on behalf of himself and all others similarly situated,

Plaintiff, Appellee,

v.

SPAR GROUP, INC.,

Defendant, Appellant,

SPAR BUSINESS SERVICES, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

James M. Nicholas, with whom Jillian M. Collins and Foley & Lardner LLP were on brief, for appellant.
Brook S. Lane, with whom Hillary Schwab and Fair Work, P.C. were on brief, for appellee.

January 25, 2019

**TORRUELLA**, **Circuit Judge**.  SPAR Group, Inc. ("SPAR") appeals from the district court's denial of its motion to compel arbitration.  SPAR, a retail services provider, obtains most of its personnel from a staffing company named SPAR Business Services, Inc. ("SBS").  SBS engaged plaintiff-appellee Paradise Hogan ("Hogan") as an independent contractor and assigned him to perform services for SPAR.  Hogan and SBS entered into an "Independent Contractor Master Agreement" to which SPAR was not a party. Subsequently, Hogan sued SBS and SPAR, and both sought to compel arbitration invoking an arbitration clause in the Independent Contractor Master Agreement.  The district court compelled arbitration as to Hogan's claims against SBS, but found that SPAR had no legal basis to compel Hogan to arbitration.

SPAR appealed, pressing two alternate theories for why it can compel Hogan to arbitrate despite not being a party to the agreement containing the arbitration clause.  A review of the facts here mandates the conclusion that "the obvious bar to arbitrability is the abecedarian tenet that a party cannot be forced to arbitrate if it has not agreed to do so."  InterGen N.V. v. Grina, 344 F.3d 134, 137 (1st Cir. 2003).  We affirm.

## I.  Background

Because SPAR's request "to compel arbitration was made in connection with a motion to dismiss or stay, we draw the

-2-

relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration."  Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018).

## A. Factual Background

SBS is a staffing company that provides personnel to various retail services providers, including SPAR.  SPAR executes field merchandising, auditing, and assembly services for retailers through personnel referred to as "Field Specialists," substantially all of whom are supplied by SBS.  SBS is "affiliate[d]" to SPAR "but is not a subsidiary of or controlled by SPAR."[1]  SBS classifies the Field Specialists it provides to SPAR as independent contractors.

Paradise Hogan entered into an "Independent Contractor Master Agreement" (the "Master Agreement") with SBS, which SBS requires all Field Specialists to sign.[2]  Paragraph twenty of the

---

[1]  The Amended Complaint does not specify the exact relationship between SBS and Spar.

[2]  The Agreement reflects an "[e]lectronic [a]cceptance by Independent Contractor" on April 19, 2016.  Yet, the Amended Complaint states that SBS assigned Hogan to work for Spar "in or about May 2015" and that the Agreement was signed "[p]rior to commencing his employment with SBS and SPAR."  In any case, the inconsistency is not material to the controversies at issue here.

-3-

Master Agreement requires its parties to resolve disputes through arbitration:

> Any dispute between the Parties relating to this Master Agreement or otherwise arising out of their relationship under its terms, including but not limited to any disputes over rights provided by federal, state, or local statutes, regulations, ordinances, and/or common law, shall be determined by arbitration. . . . The Parties acknowledge the Master Agreement evidences a transaction involving interstate commerce, and the arbitration shall be governed by the United States Federal Arbitration Act (9 U.S.C., Sections 1-16) ("FAA").

Paragraph twenty of the Master Agreement also states that "[t]he Parties agree that any claim shall be brought solely in the individual capacity of SBS or the Independent Contractor, and not as a representative of any other persons or any class." SPAR is not a party to the Master Agreement.

In or about May 2015, SBS assigned Hogan to perform Field Specialist duties for SPAR. Neither SBS nor SPAR reimbursed Hogan or other Field Specialists for costs or expenses incurred in the performance of their assignments. While SBS required Hogan and other Field Specialists to acquire general liability and workers' compensation insurance, neither SBS nor SPAR paid for or contributed to these expenses. Hogan's regular hourly rate for performing services as a Field Specialist was minimum wage.

**B. Procedural Background**

On January 6, 2017, Hogan filed a putative class action complaint against both SBS and SPAR essentially alleging that they misclassified him and other Field Specialists as independent contractors rather than employees, such that they avoid paying mandated expenses and cause them to earn less than minimum wage. Hogan asserted various causes of action, including breach of contract, unjust enrichment, and violations to the Fair Labor Standards Act and Massachusetts wage and hour statutes.

On May 2, 2017, after SBS and SPAR moved to compel arbitration or dismiss for failure to state a claim, Hogan requested to amend the complaint to "narrow the scope of his claims." The district court allowed Hogan's request and denied as moot defendants' motion to compel arbitration. On May 17, 2017, Hogan filed "Plaintiff's First Amended Class Action Complaint and Demand for Jury Trial" (the "Amended Complaint"), abandoning all but his claims pursuant to the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150, and the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149, § 148B.

In response, SBS and SPAR renewed their request to compel arbitration. In essence, they argued that both were shielded by the Master Agreement's arbitration provision (although SPAR was not a signatory) and that Hogan's consent to waive class and

-5-

representative actions was valid and enforceable. In the alternative, they moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

On March 12, 2018, the district court denied the motion to compel arbitration as to SPAR, finding that it had no legal basis to compel Hogan to arbitration. As to SBS, the district court noted that Hogan was not contesting that his claims were subject to arbitration, but rather that the court was barred from enforcing the arbitration agreement pursuant to the National Labor Relations Act because it precluded him from pursuing class remedies in legal proceedings. Because a similar issue was before the U.S. Supreme Court at the time, the district court stayed Hogan's case as to SBS to await the ruling in Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016), cert. granted, 137 S. Ct. 809 (2017). Finally, the district court denied the Fed. R. Civ. P. 12(b)(6) dismissal request. On April 4, 2018, SPAR filed a notice of appeal.[3]

After SPAR filed its notice of appeal, the Supreme Court decided in Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1632 (2018), that employees' arbitration agreements waiving class and

---

[3] Although generally, interlocutory orders are not immediately appealable, see 28 U.S.C. § 1291, the Federal Arbitration Act creates an exception for orders denying petitions to compel arbitration, see 9 U.S.C. § 16(a)(1)(B). Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005) (so noting).

-6-

collective action procedures are enforceable, as pertinent here. In response, the district court dismissed Hogan's claims against SBS, compelling arbitration of those claims.

## II. **Analysis**

"We review de novo a district court's interpretation of an arbitration agreement and its decision regarding whether or not to compel arbitration." Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017) (citing S. Bay Bos. Mgmt. v. Unite Here, Local 26, 587 F.3d 35, 42 (1st Cir. 2009)).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986)). Thus, a party that attempts to compel arbitration "must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." Ouadani, 876 F.3d at 36 (quoting InterGen, 344 F.3d at 142).

While SPAR invokes the "federal policy favoring arbitration," such policy "presumes proof of a preexisting agreement to arbitrate disputes arising between the protagonists." McCarthy, 22 F.3d at 355. As this court has highlighted,

-7-

"arbitration is a matter of consent, not coercion." <u>Ouadani</u>, 876 F.3d at 36 (quoting <u>Stolt-Nielsen S.A.</u> v. <u>AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 681 (2010)).

Here, SPAR faces a steep climb, as it concedes that it is not a party to the Master Agreement it invokes. Indeed, the Master Agreement's first sentence clearly establishes Hogan and SBS (not SPAR) as the only parties: "[t]his Independent Contractor Master Agreement ('Master Agreement') is entered into between Hogan Paradise ('Independent Contractor') and SPAR Business Services, Inc. ('SBS')." Most crucially, the Master Agreement's arbitration clause specifically limits its applicability to "the Parties." It states that: "[a]ny dispute between <u>the Parties</u> relating to this Master Agreement or otherwise arising out of <u>their</u> relationship under its terms . . . shall be determined by arbitration." (Emphasis added).

Nonetheless, SPAR claims that despite not being a party to the Master Agreement, it is "entitled to invoke the arbitration clause." It posits that: (1) it is a third-party beneficiary of the agreement between Hogan and SBS; and (2) Hogan is equitably estopped from avoiding arbitration of his claims against SPAR.[4]

---

[4] Hogan argues that Spar waived its equitable estoppel and third-party beneficiary arguments because they were insufficiently raised at the district court level. Because the district court understood it had enough material to rule on those issues, we will not deem them waived. See <u>Rodríguez-López</u> v. <u>Triple-S Vida, Inc.</u>,

This Circuit has recognized that in certain exceptional situations, a nonsignatory to an agreement may invoke an arbitration clause. See Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 9-10 (1st Cir. 2014) (applying principles of agency to find that employees, acting within the scope of their employment, can invoke an arbitration provision adopted by their employer). This is not such a case.[5]

## A. SPAR is not a third-party beneficiary of the Independent Contractor Master Agreement

"As is generally the case in matters of contract interpretation, '[t]he crux in third-party beneficiary analysis . . . is the intent of the parties.'" McCarthy, 22 F.3d at 362 (alterations in original) (quoting Mowbray v. Moseley, Hallgarten,

---

850 F.3d 14, 21 n.3 (1st Cir. 2017) ("We note that the district court found Rodríguez had sufficiently preserved her . . . argument, and we find so as well.").

[5] The district court applied federal common law to evaluate whether a non-signatory can invoke an arbitration provision, "absent any contention from Hogan." On appeal, the parties do not contest this. See Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 46 (1st Cir. 2008) ("In the absence of any contention from the parties to the contrary, we apply federal common law to resolve the issues." (citing InterGen, 344 F.3d at 143)); see also Ouadani, 876 F.3d at 37 (looking to "federal common law, which incorporates 'general principles of contract and agency law,'" to determine whether a nonsignatory to an arbitration agreement was bound to arbitrate his claim (citing InterGen, 344 F.3d at 144)). But see Grand Wireless, 748 F.3d at 11-12 (calling into question the propriety of using federal law to determine whether a non-party to an arbitration agreement can assert its protection).

Estabrook & Weeden, 795 F.2d 1111, 1117 (1st Cir. 1986)). A third-party beneficiary must demonstrate with "special clarity that the contracting parties intended to confer a benefit on him," considering that such status is "an exception to the general rule that a contract does not grant enforceable rights to nonsignatories." Id. In evaluating whether such "special clarity" exists, a court should focus on the "specific terms" of the agreement at issue, being mindful that it "ought not to distort the clear intention of contracting parties or reach conclusions at odds with the unambiguous language of a contract." InterGen, 344 F.3d at 146 (citing EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002)).

SPAR concedes that it is not named in the Master Agreement, but essentially argues that it is a third-party beneficiary because the Master Agreement confers upon it, "as a customer of SBS," the right to dictate certain work requirements to the independent contractor. We gather that SPAR refers to paragraph nine of the Master Agreement, yet that clause merely states that SBS would convey to Hogan scheduling and assignment requirements, if any, that it received from its customers, which include SPAR. At best, this is a tenuous grant of a vague benefit. It does not come close to showing the requisite "special clarity." Moreover, even if SPAR could be said to benefit from the clause,

-10-

"a mere benefit to the nonsignatory resulting from a signatory's exercise of its contractual rights is not enough." Ouadani, 876 F.3d at 39 (1st Cir. 2017) (citing InterGen, 344 F.3d at 146-47). Rather, the contract must "mention [or] manifest an intent to confer specific legal rights upon [SPAR]," and the contract language that SPAR points us to does not make the cut. InterGen, 344 F.3d at 147.

Finally, even if SPAR could show an intent of the parties to confer upon it some benefit unrelated to arbitration, the language of the arbitration clause would still be dispositive. As mentioned earlier, the arbitration clause limits its applicability to the signatories by only covering disputes "between the Parties," so it is clear that it does not confer arbitration rights to SPAR or any third party.

Our conclusion is reinforced by the fact that the Master Agreement references SBS's "customers" in other sections, yet omits that reference in the arbitration clause. SBS could have easily modified the arbitration clause to make it applicable to "[a]ny dispute between the Parties [and/or any SBS customer] relating to this Master Agreement," but it did not. See Mowbray, 795 F.2d at 1118 (finding persuasive the appellants' argument that given "the probable sophistication of the drafters of the agreement, . . . the omission of defendants from the arbitration

-11-

clause must be regarded as purposeful"); see also Cortés-Ramos v. Martin-Morales, 894 F.3d 55, 59-60 (1st Cir. 2018) (holding that nonsignatory singer, Ricky Martin, could not compel arbitration based on an agreement that referenced him in certain provisions but did not in its arbitration clause).

Finally, the Agreement has an integration clause that reads:

> This Master Agreement constitutes the complete, integrated agreement of Independent Contractor and SBS and supersedes all prior written and oral agreements, negotiations, promises, and representations, if any. Nothing contained in this Master Agreement may be modified in any way except through a written agreement signed by Independent Contractor and Mr. Robert Brown of SBS.

This language accentuates the parties' intent to confine to its signatories the right to invoke the Master Agreement's arbitration clause. See McCarthy v. Azure, 22 F.3d 351, 358 (1st Cir. 1994) (stating that "[t]he intent to limit arbitral rights to signatories is also made manifest by the inclusion of an integration clause").

Thus, a review of the language of the Master Agreement, and more particularly its arbitration clause, shows that SPAR was not an intended third-party beneficiary of the signatories' agreement to arbitrate. See InterGen, 344 F.3d at 146 (declining to read into agreement "rights and obligations that the contracting parties did not see fit to include").

-12-

**B. Hogan is not equitably estopped from avoiding arbitration of his claims against SPAR**

SPAR propounds that, even if it is not a signatory to the Agreement, Hogan is nevertheless equitably estopped from avoiding arbitration because his claims against SPAR are "intertwined" with the Master Agreement and because SPAR and SBS, which is a signatory to the Agreement, are "closely related." SPAR primarily relies on Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38 (1st Cir. 2008).

"[E]quitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." InterGen, 344 F.3d at 145. Generally, federal courts "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues . . . to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Ouadani, 876 F.3d at 38 (second emphasis added) (quoting InterGen, 344 F.3d at 145).

In Sourcing Unlimited, 526 F.3d at 46-48, this court applied equitable estoppel to hold that the plaintiff, a corporate signatory to a partnership agreement, was compelled to arbitrate its claims against a non-signatory defendant. The court found that the plaintiff's claims were "sufficiently intertwined" with the agreement that the plaintiff had signed with the defendant's parent company. Id. at 47. Hence, it reversed and remanded with

-13-

instructions to the district court to compel arbitration. Id. at 48.

We find Sourcing Unlimited distinguishable from the case at hand. First, prior to considering the "intertwined" requirement, we must step back and once again recur to the language of the arbitration clauses. In Sourcing Unlimited, the "broadly-worded" arbitration clause stated: "[a]ny action to enforce, arising out of, or relating in any way to, any of the provisions of this agreement shall be brought in front of a P.R. China arbitration body." Id. at 41 (emphasis added). Having the plaintiff consented to arbitrate any action "arising out of, or relating in any way to" the agreement, the court applied the equitable estoppel doctrine to enforce arbitration of claims that fell within the scope of the arbitration clause and were intertwined with the agreement but were brought against a non-signatory subsidiary. Id. at 48.

Unlike Sourcing Unlimited, the arbitration provision here cabins its scope to disputes "between the Parties" to the Master Agreement, with the "Parties" unambiguously defined as SBS and Hogan. While one could say that arbitrating a dispute relating to the contract against an affiliated third-party was within the scope of what the plaintiff consented to in Sourcing Unlimited,

-14-

the same cannot be said here.  Hogan clearly and unambiguously consented to arbitrate only claims between him and SBS.[6]

And while SPAR alleges that its "close relationship"[7] with SBS should bind Hogan, we need not delve into the nature of

---

[6]  Similarly, Spar cites Herrera-Gollo v. Seaborne Puerto Rico, LLC, Civil No. 15-1771(JAG), 2017 WL 657430 (D.P.R. Feb. 17, 2017) and Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115 (2d Cir. 2010) as persuasive authority.  Irrespective of whether we agree with their outcome and analysis, which we need not discuss now, those cases are distinguishable due to the broad reach of the arbitration clauses at issue therein.

In Herrera-Gollo, the plaintiff argued that defendant Seaborne Puerto Rico could not invoke the arbitration clause because the agreement was signed by Seaborne Virgin Islands, Inc., but the arbitration provision covered "all claims, controversies, or disputes . . . against the Company, its shareholders or subsidiary or parent or affiliated companies . . . arising out of or in any way relating to [plaintiff's] application for employment." Herrera-Gollo, 2017 WL 657430, at *3 (emphasis added) (emphasis in original omitted).  The court concluded that "the language evinces a broad intent that Plaintiff be required to arbitrate claims against a variety of entities associated with Seaborne Virgin Islands, not just that specific entity" and compelled plaintiff to arbitrate his claims against Seaborne Puerto Rico even though it had not signed the agreement. Id. at *7.  The same intent is not evidenced by the language of the Master Agreement.

In Ragone, the court compelled plaintiff Rita Ragone to arbitrate her employment discrimination claims against her direct employer, Atlantic Video ("AVI"), and ESPN, for whom she provided services through AVI, finding that she was equitably estopped from avoiding arbitration as to ESPN.  Nevertheless, once again, the pertinent arbitration clause there was broader, as she had agreed to arbitrate "any and all claims or controversies arising out of [her] employment or its termination." Ragone, 595 F.3d at 118.

Likewise, the other non-binding cases that Spar cites do not persuade us to alter our reasoning here.

[7]  According to the Amended Complaint, "SBS is an affiliate of

-15-

their relationship, as irrespective of it, SPAR has not shown any intent on behalf of Hogan to arbitrate with any entity other than SBS. See Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 361–62 (2d Cir. 2008) (noting that any relationship among parties must support the conclusion that the signatory "consented to extend its agreement to arbitrate" to the nonsignatory). SBS and SPAR are sophisticated commercial players that chose to conduct their business as separate corporate structures, and we see no reason to ignore the legal scheme that they constructed. Hence, SPAR has not put forth any convincing argument or authority establishing that the equitable estoppel doctrine is applicable when the language of the contract is so clearly limiting, and we find no legal basis for forcing Hogan to arbitrate his claims against SPAR when he demonstrated no intent to do so.

In any case, a review of the facts here shows that SPAR could not establish the "intertwined" requirement for purposes of applying equitable estoppel. In Sourcing Unlimited the court concluded that the plaintiff's claims were "sufficiently intertwined" with the agreement because they "either directly or indirectly invoke[d] the terms of the" agreement, id. at 47, and they "ultimately derive[d] from benefits" the plaintiff alleged

_____

SPAR but is not a subsidiary of or controlled by SPAR . . . ."

-16-

were due under the agreement, id. at 48.  Moreover, the court noted that if the agreement were to become void, the plaintiff's obligations under a side-contract with defendant "would be meaningless."  Id.

Here, Hogan's claims against SPAR are premised upon Massachusetts wage and hour law, not the Master Agreement between SBS and Hogan: he seeks a remedy for "unpaid wages and benefits" which he alleges he has a right to pursuant to Massachusetts law. Moreover, Hogan's claims would exist even if the Master Agreement were declared void, as they are based on the nature of the services that Hogan provided to SPAR.  Finally, as the Amended Complaint shows, Hogan does not claim any benefit or right from SPAR arising from the Master Agreement.  See Sourcing Unlimited, 526 F.3d at 47 ("The [signatory] plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel [against the plaintiff]." (alteration in original) (quoting In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002), rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401 (2003))).  There is therefore no cognizable basis for applying equitable estoppel here.

### III.  Conclusion

We find no legal basis to compel Hogan to arbitration, as the clear terms of the Master Agreement show that he did not consent to arbitrate his claims against SPAR.  The district court's judgment is therefore affirmed.

**Affirmed**.