# United States Court of Appeals
## For the First Circuit

No. 22-1301

PUERTO RICO FAST FERRIES LLC,

Plaintiff, Appellant,

v.

SEATRAN MARINE, LLC; MR. CADE, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Montecalvo, Lipez, and Thompson,
Circuit Judges.

Mauricio O. Muñiz-Luciano, with whom Paula T. De Felice-Alejandro and Marini Pietrantoni Muñiz LLC were on brief, for appellant.
Benjamin W. Kadden, with whom Arlyn González-Díaz and Cancio, Nadal & Rivera, L.L.C. were on brief, for appellees.

May 21, 2024

**MONTECALVO, Circuit Judge**.   The plaintiff-appellant Puerto Rico Fast Ferries LLC ("Fast Ferries") brought a breach of contract claim and a culpa in contrahendo claim[1] against Mr. Cade, LLC and SeaTran Marine, LLC ("SeaTran") (collectively "defendants-appellees").   The defendants-appellees filed a motion to dismiss, which the district court granted in part.   The district court concluded that the contract between Fast Ferries and Mr. Cade, LLC did not contain a termination date and remained in effect.   Thus, the contract's mediation and forum-selection clauses were binding on the parties.   However, in dismissing the complaint as to both defendants based on the contract, the district court did not address Fast Ferries' argument that SeaTran was not a signatory of the agreement and, therefore, could not invoke the mediation and forum-selection clauses contained therein.   On appeal, Fast Ferries argues that (1) the contract expired and the mediation and forum-selection clauses are not binding, and (2) the claims against SeaTran should not be dismissed because SeaTran was not a signatory of the contract.   For the following reasons, we affirm the district court's order on the defendants-appellees' motion to dismiss.

---

[1] The doctrine culpa in contrahendo means "fault in negotiating." Velazquez Casillas v. Forest Lab'ys, Inc., 90 F. Supp. 2d 161, 166 (D.P.R. 2000). This doctrine is generally "used to compensate a party for the expenses it incurred in reliance on the other party's offer to form a contract when the contract negotiations break down." Id.

## I.    Background[2]

In 2018, the Puerto Rico Maritime Transportation Authority ("PRMTA") entered into a Master Time Charter Agreement with Fast Ferries ("PRMTA Master Agreement"). Under that agreement, Fast Ferries agreed to provide ferries, with both personnel and deckhands, to supplement PRMTA's transportation route between the main island of Puerto Rico and the island municipalities of Culebra and Vieques. The PRMTA Master Agreement remained in effect at the time of the filing of the verified complaint. To fulfil its obligations, Fast Ferries initially contracted with Mr. Cade, LLC to subcharter the motor vessel Mr. Cade ("the vessel" or "M/V Mr. Cade")[3] and procure a licensed crew, executing the Master Time Charter Agreement ("Master Agreement"), the contract at issue here. Blake Miguez ("Miguez") is the owner of both Mr. Cade, LLC and SeaTran, the entity responsible for operating M/V Mr. Cade.

Under the Master Agreement, Mr. Cade, LLC agreed to permit Fast Ferries to charter "various vessels . . . from time to

---

[2] "Because this appeal follows the granting of a motion to dismiss," we recite the facts as stated in the operative pleading, here, the verified complaint. Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 4 (1st Cir. 2007). "We may consider not only the factual allegations of the [verified] complaint but also any matters fairly incorporated within that pleading." Id. at 5.

[3] M/V Mr. Cade, is a "Vehicle/Passenger" vessel with the official vessel number 1149576.

time" by entering into a Short Form Time Charter Agreement for those vessels ("Short Form"). The Master Agreement defines a "Short Form" as a "Notice of Hire - Boat Charter for each chartered vessel"; an executed Short Form was attached to the Master Agreement as Exhibit A. The Master Agreement specifies that any modification of the Master Agreement must be reduced to writing and have the written consent of both parties.

The Master Agreement contains a choice of law provision, which dictates that the agreement "shall be construed in accordance with the admiralty and maritime laws of the United States of America." Additionally, "[a]ny dispute which arises from or is related to this Agreement or any provisions of the Short Form . . . shall be resolved by mediation . . . in Lafayette, Louisiana."[4] Only if "the parties are unable to agree" on a mediation format, or mediation otherwise fails, may disputes under the Master Agreement be litigated. Under the Master Agreement, Mr. Cade, LLC and Fast Ferries agreed that any litigation would occur "only in the United States District Court for the Western District of Louisiana, Lafayette-Opelousas Division."

Although the Master Agreement does not include an express duration or means of termination, Article 2 of the

_____

[4] The only exception to this provision is any dispute that arises under Article 32 of the Master Agreement, which governs Fast Ferries' ability to subcharter to the PRMTA.

agreement describes the "[c]ontract [f]orm and [d]uration." It provides that in the event of any "conflict[s] or inconsistenc[ies] between the terms of [the Master] Agreement and the Short Form the latter shall prevail." Article 2 of the Master Agreement goes on to explain that either party may cancel a charter under the "[Master] Agreement and any unexpired Short Form by giving ninety (90) days prior written notice to the other."

By its own terms, the Master Agreement must be read "together with each Short Form." The Short Forms executed by the parties incorporate the terms of the Master Agreement by reference and provide the specific terms for the charter including the price, duration, and delivery details. The Master Agreement standing alone does not establish a charter. The Master Agreement explains that it neither "obligate[s] [Mr. Cade, LLC] to charter its vessels to" Fast Ferries "nor does it obligate [Fast Ferries] to hire any vessel" from Mr. Cade, LLC. However, the first Short Form, attached to the Master Agreement as Exhibit A, began the initial charter period. The initial Short Form executed a charter of M/V Mr. Cade that lasted from August 1, 2018, through July 31, 2019. Fast Ferries and Mr. Cade, LLC entered into seven subsequent amended Short Form agreements, which extended Fast Ferries' charter of M/V Mr. Cade to April 2020, with no lapse in time between charters. When the final Short Form expired, Fast Ferries returned the vessel to its home port in Louisiana. Miguez reminded

Fast Ferries that the vessel was available and prepared for rapid mobilization if Fast Ferries wished to recharter it.

About a year after Fast Ferries' last charter of M/V Mr. Cade, the PRMTA experienced an operational state of emergency in February and March of 2021 requiring additional passenger and cargo ferries. The PRMTA and Fast Ferries began discussing the possibility of rechartering M/V Mr. Cade. Fast Ferries began negotiating with Miguez, discussing price and potential modifications to the vessel. Fast Ferries believed that these conversations were sufficient to constitute an agreement to recharter M/V Mr. Cade. Fast Ferries then relied on this purported agreement for the charter of M/V Mr. Cade when it submitted its proposal to recharter vessels to the PRMTA. While the defendants-appellees were aware of Fast Ferries' proposal submission, Miguez, on behalf of the defendants-appellees, entered into negotiations and a subsequent agreement with HMS Ferries, Inc., Fast Ferries' direct competitor, to charter vessels, including M/V Mr. Cade.

Thereafter, Fast Ferries filed its verified complaint in district court against Mr. Cade, LLC and SeaTran alleging breach of contract and liability pursuant to culpa in contrahendo.

The defendants-appellees moved to dismiss the complaint. In doing so, the defendants-appellees denied that they entered into a "purported agreement" for Fast Ferries to recharter M/V Mr.

Cade. Specifically, the defendants-appellees argued that the Master Agreement was in effect at the time of the negotiations and required a written agreement that was in "substantial conformity" with the Short Form for the charter of M/V Mr. Cade. As the "purported agreement" was not in writing, the defendants-appellees argue that it was not a valid Short Form, and thus, not an enforceable agreement to charter M/V Mr. Cade under the terms of the Master Agreement. Additionally, the defendants-appellees argued the court was required to enforce the mediation and forum-selection clauses of the Master Agreement.

In response, Fast Ferries asserted that its claims were not barred because the Master Agreement expired when the final amended Short Form expired in April 2020. Additionally, Fast Ferries contended that SeaTran could not rely on the mediation and forum-selection clauses because SeaTran was not a signatory of the Master Agreement.

The district court issued a text order granting the motion to dismiss in part. The district court determined that it could not "find that the expiration date of the Short Form also applie[d] to the Master Agreement." The district court noted that the Master Agreement required "any amendment . . . be in writing and signed by the parties" and that "the clear language of the Short Form [did not] suggest[] that the signatories intended these forms to amend the Master Agreement." The district court reasoned

that there was no evidence that the parties intended to set an expiration date in the Master Agreement or have the Short Forms supply the term of duration of the Master Agreement. Finding that the Master Agreement remained in effect, the district court enforced the mediation and forum-selection clauses in favor of the defendants-appellees. The district court did not address Fast Ferries' argument regarding SeaTran's status as a nonsignatory of the Master Agreement.

## II. Standard of Review

We review the appeal of the district court's order granting the motion to dismiss de novo. City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 30 (1st Cir. 2022). "In so doing, we accept [the] well-pleaded factual allegations in the complaint as true and . . . view all reasonable inferences in the plaintiff's favor." Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc., 22 F.4th 1, 6 (1st Cir. 2021).

## III. Discussion

This appeal concerns whether the mediation and forum-selection clauses in the Master Agreement warrant dismissal of Fast Ferries' claims. In making this determination, we must now answer two questions: (1) is the Master Agreement still in effect and (2) do the mediation and forum-selection clauses in the

Master Agreement apply to SeaTran as a nonsignatory. We answer both questions in the affirmative.

## A. Master Agreement Duration

We begin by clarifying what body of law governs the interpretation of the Master Agreement. The parties cite a combination of Puerto Rico law, First Circuit case law, and maritime law. The district court relied on Puerto Rico law, but the Master Agreement demands it be construed under "the admiralty and maritime laws of the United States of America." At oral argument, the parties agreed that federal maritime law is controlling here.

Under a traditional time charter, such as the one at issue here, an owner leases a vessel to a "charterer," who directs the commercial activities of the vessel for a fixed period. Moore v. Phillips Petroleum Co., 912 F.2d 789, 791 (5th Cir. 1990); see Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 314 (1st Cir. 1997). As a charter agreement is a contract that is maritime in nature, it is "subject to contract rules of construction under the ordinary principles of maritime contract law." 80 C.J.S. Shipping § 76 (2024).

We thus rely on general principles of maritime contract law in interpreting the Master Agreement. See CITGO Asphalt Refin. Co. v. Frescati Shipping Co., Ltd., 140 S. Ct. 1081, 1088 (2020) (clarifying that "[f]ederal maritime law includes general

principles of contract law" (quoting 2 T. Schoenbaum, Admiralty & Maritime Law § 11:2, p. 7 (6th ed. 2018))); EIMSKIP v. Atl. Fish Mkt., Inc., 417 F.3d 72, 76 (1st Cir. 2005) (noting that absent any relevant federal statute, we apply "the general maritime law, as developed by the judiciary" (quoting E. River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864 (1986))).[5] General admiralty and maritime law is "[d]rawn from state and federal sources, . . . [and] is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." E. River S.S. Corp., 476 U.S. at 864-65. In some cases, the interpretation of a maritime contract "may so implicate local interests as to beckon interpretation by state law." Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd, 543 U.S. 14, 27 (2004).[6]

---

[5] In applying these general principles, we are in alignment with the Master Agreement's choice of law provision, which is presumptively enforceable. See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC, 144 S. Ct. 637, 646-48 (2024).

[6] This court has generally, in the absence of a controlling federal rule, applied state law when interpreting marine insurance contracts. See Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine, 778 F.3d 69, 76 (1st Cir. 2015); Com. Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006). However, contracts for charter or specific performance that are maritime in nature have long been viewed under general maritime law. See Watts v. Camors, 115 U.S. 353, 362 (1885) ("Americans and Englishmen, entering into a charter-party of an English ship for an ocean voyage, must be presumed to look to the general maritime law of the two countries, and not to the local law of the state in which the contract is signed."); Union Fish Co. v. Erickson, 248 U.S. 308, 314 (1919); CITGO Asphalt Refin. Co., 140 S. Ct. at 1088.

However, in considering state or local interests, the appropriate "touchstone is a concern for the uniform meaning of maritime contracts." Id. at 28. In the case of contracts like the Master Agreement, which as we will show momentarily are a common practice in the maritime industry, the Supreme Court has said "that there would be little room for argument in favor of allowing local law to control their validity." Kossick v. United Fruit Co., 365 U.S. 731, 742 (1961). And nothing before us indicates that Puerto Rico has a "pressing and significant" interest here, thus "application of state-law principles [is not] required." E. River S.S. Corp., 476 U.S. at 864 n.2 (quoting Kossick, 365 U.S. at 739).

We therefore construe the agreement "like any other contract[]" under federal common law, focusing on its terms and interpreting them in a manner "consistent with the intent of the parties." CITGO Asphalt Refin. Co., 140 S. Ct. at 1087 (quoting Norfolk S. Ry. Co., 543 U.S. at 31). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." Id. at 1088 (quoting M & G Polymers USA, LLC v. Tackett, 574 U.S. 427, 435 (2015)). However, if the agreement is ambiguous, we may examine "relevant extrinsic evidence of the parties' intent and the meaning of the words that they used." Id. (quoting 11 R. Lord, Williston on Contracts § 30:7 (4th ed. 2012)).

Here, we must determine the duration of a Master Agreement that has no duration term in its text. In Fast Ferries' view this conundrum is easily resolved by reading the Master Agreement in connection with the Short Forms the parties executed. Fast Ferries maintains that the Master Agreement has no independent contractual value and, while the Master Agreement does not have a specific duration, the first Short Form defined the initial "Charter Term" as August 1, 2018, through July 31, 2019, and offered "the exclusive option to extend the charter term," which the parties did until April 2020. Given that the Short Form prevails in the event of any inconsistency between it and the Master Agreement, Fast Ferries reasons that the Short Form supplies terms that the Master Agreement omits. Under this logic, the Master Agreement remained in effect only as long as there was a Short Form in place, which means the Master Agreement terminated when the last Short Form ended in April 2020.

Notably, Fast Ferries does not demonstrate how the absence of a termination date in the Master Agreement and the inclusion of explicit durations of charters in the Short Forms create a conflict or inconsistency. For two clauses to be "inconsistent" with each other, they must be "[l]acking agreement" or otherwise "not compatible" with one another. Inconsistent, Black's Law Dictionary (11th ed. 2019). The Master Agreement does not set forth a predetermined duration of the Master Agreement or

establish any specific parameters for how the Master Agreement can be terminated. Similarly, the Short Forms do not address the duration or means of termination for the Master Agreement. Rather, the Short Forms address the duration or "Charter Term" for the charter of a specific vessel. The final Short Form addresses the duration for the charter of M/V Mr. Cade, but there is no language addressing the duration of the Master Agreement. Additionally, there is no language in the Short Form to support the contention that the parties intended the end of the Short Form to automatically result in the termination of the Master Agreement. Based on the text of the Master Agreement and the final Short Form, it appears there is no conflict or inconsistency regarding the duration of the Master Agreement. Thus, we look to the Master Agreement, rather than the Short Form, to determine whether the Master Agreement remains in effect.

The defendants-appellees take the position that the absence of a termination date gives the Master Agreement a perpetual duration. To support this contention, they highlight the fact that the Master Agreement contemplates the parties executing multiple Short Forms that could span several distinct charter terms.

We agree with the defendants-appellees' view that the Master Agreement's duration is not inherently tied to the duration of the last Short Form. To be sure, the Master Agreement by its

own terms contemplates multiple Short Forms because it must be read in connection "with each Short Form Time Charter Agreement." (Emphasis added). The Master Agreement along "with any Short Form between [Mr. Cade, LLC] and [Fast Ferries]" governs the rights and obligations of both parties. (Emphasis added). The Master Agreement "does not obligate" the hire of any vessels by Fast Ferries nor the charter of vessels by Mr. Cade, LLC to Fast Ferries, which is accomplished by the execution of a Short Form; therefore, the duration of the Master Agreement is not directly tethered to the existence of an active Short Form. With the understanding that the Master Agreement governs the relationship between the parties beyond the terms of individual charters, we must grapple with the defendants-appellees' contention that the Master Agreement is perpetual.[7]

_____

[7] Although we do not rest our decision upon it, we note that our understanding of the interplay between the Master Agreement and the Short Forms is supported by what we have gleaned to be the relevant customs and practices of the maritime industry and the parties' own dealings. See M & G Polymers USA, LLC, 574 U.S. at 439 ("Although a court may look to known customs or usages in a particular industry to determine the meaning of a[n ambiguous] contract, the parties must prove those customs or usages using affirmative evidentiary support in a given case."). In the broad sphere of "[m]arine transportation," it is common to engage in "a complex web of multiple party transactions." 4 Energy Law and Transactions § 86.04(2)(a) (2023). Specifically, in chartering vessels, it is not unusual for parties to enter into a Master Time Charter Agreement that is meant to govern future time charters and have the "precise terms of each individual time charter . . . also governed by Short Form Time Charter Agreements." Offshore Marine Contractors, Inc. v. Inland Salvage, Inc., No. 13-6346, 2014 WL 2047456, at *1 (E.D. La. May 16, 2014); see Genesis Marine, L.L.C.

We conclude that the Master Agreement is not perpetual, but instead it has an indefinite duration and is terminable by either party. Given the law's general disfavor of perpetual contracts, "a construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract." 17B C.J.S. Contracts § 608 (2024); accord 17A Am. Jur. 2d Contracts § 457 (2024). We cannot conclude that the absence of a duration term in the Master Agreement, in and of itself, demonstrates a sufficient intention of the parties to form a perpetual agreement.

The Master Agreement is a maritime contract for services, the exclusive right to charter vessels, that spans several years and multiple charters. As a general principle, "contracts [for services] that mention no period of duration are

---

of Del. v. Hornbeck Offshore Servs., L.L.C., 951 F.3d 629, 630 (5th Cir. 2020) (noting the charters were covered by multiple sets of contracts that incorporated a master agreement). Fast Ferries followed this same approach with the PRMTA Master Agreement, which Fast Ferries noted in its complaint "is still valid and existing today . . . [and] contemplates the future charter[s] . . . upon execution of what is known in the maritime industry as a Short Form Notice of Hire . . . of a particular vessel." Fast Ferries' argument that the expiration of a Short Form necessarily results in the expiration of the Master Agreement is further undermined by its contractual history with Mr. Cade, LLC. The third Short Form that extended the charter term expired on September 16, 2019. The fourth Short Form was not executed until September 17, 2019. Under Fast Ferries' own logic, the Master Agreement would have expired on September 16, 2019, and to charter the vessel it would have needed to enter into a new Master Agreement. However, Fast Ferries was able to seamlessly extend the charter of the vessel without entering a new Master Agreement.

construed as terminable at will." 17A Am. Jur. 2d Contracts § 520; see also 17B C.J.S. Contracts § 609. This approach has been followed in maritime contracts for services that lack a definitive duration. Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1281 (1st Cir. 1993) (noting the "well-established rule that maritime employment is terminable at will by either party in the absence of a contract setting a specific term"). Considering the nature of the contract here and the lack of a specified duration, we construe the Master Agreement as a contract that is terminable by either party.[8] The record does not demonstrate that Fast Ferries notified Mr. Cade of a decision to terminate the Master Agreement. Thus, the Master Agreement remains in effect, and in the absence of any other challenge to the mediation and forum-selection clauses, we find that the district court did not err in dismissing the complaint with regard to Mr. Cade, LLC.[9]

---

[8] Although we conclude that the Master Agreement is terminable at will, general contract principles also allow for an interpretation that the agreement is terminable after a reasonable amount of time. See 70 Am. Jur. 2d Shipping § 185 (2024) ("Where no definite time for loading or sailing has been fixed, the charterer has no right to cancel the contract prior to the expiration of a reasonable time."). Even if the Master Agreement were terminable upon expiration of a reasonable time as opposed to terminable at will, we would not find that a reasonable time period had elapsed because the Master Agreement contemplated charters spanning multiple years, the Short Forms extended the charter term for almost two years, and the events that gave rise to this litigation occurred less than a year after the charter term of the final Short Form expired.

[9] Fast Ferries asks that, in the event we find that the Master Agreement is enforceable, we remand to the district court

## B. Application to a Nonsignatory

We turn now to Fast Ferries' second argument: that the district court erred in dismissing the complaint as to SeaTran based on the mediation and forum-selection clauses because SeaTran is not a signatory of the Master Agreement. Fast Ferries takes issue with the district court's dismissal of the claims against SeaTran without any explanation, seemingly without considering that SeaTran was not a signatory to the Master Agreement. Fast Ferries acknowledged that its "allegations against SeaTran are closely intertwined with those [against] Mr. Cade[, LLC]." In arguing that the claims against SeaTran should not be dismissed, Fast Ferries first reiterates its proposition that all of its claims, including those against Mr. Cade, LLC, fall outside the scope of the Master Agreement because the agreement expired. Fast Ferries also argues that even if the Master Agreement is enforceable, the claims against SeaTran should not be dismissed because "it is clear that [SeaTran] is not . . . a signatory to the Master Agreement."

---

to allow Fast Ferries to argue that "the forum selection clause is still invalid" under M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Fast Ferries did not challenge the validity of the clause before the lower court when it responded to the defendants-appellees' motion to dismiss and does not argue it before us now. Therefore, this argument is waived. B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004).

The defendants-appellees contend that Fast Ferries should be equitably estopped from avoiding the mediation and forum-selection clauses. They argue that the claims against SeaTran as a nonsignatory are so intertwined with the Master Agreement that SeaTran may enforce the mediation and forum-selection clauses within the Master Agreement.

Although the district court did not explain its basis for dismissing the claims against SeaTran, we "may affirm a judgment on any independently sufficient ground supported by the record." Ward v. Schaefer, 91 F.4th 538, 544 n.3 (1st Cir. 2024) (cleaned up) (quoting United States v. Nivica, 887 F.2d 1110, 1127 (1st Cir. 1989)). Although the contractual clauses at issue here are for mediation and forum-selection, the parties' arguments on appeal center around the circumstances in which this court has allowed a nonsignatory to an agreement to enforce an arbitration clause against a signatory. This is unsurprising given the often-interconnected nature of mediation and arbitration. The two concepts "have long been cited together when describing extra-judicial dispute resolution mechanisms . . . [and] mediation is often explicitly required as a necessary precursor to arbitration in contract provisions." Thompson v. Cloud, 764 F.3d 82, 91 (1st Cir. 2014) (citation omitted).

Federal courts, including this court, have relied on equitable estoppel when "requiring arbitration between a signatory

and nonsignatory" of an arbitration agreement. Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases); Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 47-48 (1st Cir. 2008). In such cases we have "estop[ped] a signatory [of a contract] from avoiding arbitration with a nonsignatory when the issues to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Hogan v. SPAR Grp., Inc., 914 F.3d 34, 40-41 (1st Cir. 2019) (cleaned up and emphasis omitted) (quoting Ouadani v. TF Final Mile LLC, 876 F.3d 31, 38 (1st Cir. 2017)). The purpose of applying equitable estoppel in such cases is to "preclude[] a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003). The same principle of preventing a signatory from enjoying a contract's benefits while avoiding its burdens applies when the contract includes mediation and forum-selection clauses. See Magi XXI, Inc. v. Stato della Città del Vaticano, 714 F.3d 714, 723 (2d Cir. 2013). And should we apply equitable estoppel here, Fast Ferries, a signatory to the Master Agreement, would be estopped from avoiding mediating its claims against SeaTran and submitting to the forum-selection clause.

Our sister circuits have held that the sole fact that "a party is a non[]signatory to an agreement is insufficient, standing

alone, to preclude enforcement of a forum selection clause." Fasano v. Li, 47 F.4th 91, 103 (2d Cir. 2022). These circuits "have permitted non[]signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non[]signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." Id.; Magi XXI, Inc., 714 F.3d at 723; Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1256 (11th Cir. 2011); Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007).

Accordingly, in deciding if equitable estoppel prevents Fast Ferries from avoiding the burden of the mediation and forum-selection clauses with respect to SeaTran, we follow the analysis set forth in our prior arbitration cases. We begin by examining the scope of the mediation and forum-selection clauses. See Hogan, 914 F.3d at 41. In discussing arbitration agreements, we have held that we will not rely on equitable estoppel when the agreement "cabins its scope to disputes" arising between the signatories of the agreement. Id. We take the same approach to agreements involving mediation and forum-selection clauses.

In Hogan, for example, the arbitration agreement included a narrow clause that applied only to "dispute[s] between the Parties relating to this Master Agreement or otherwise arising out of their relationship under its terms." Id. at 37 (emphasis

added).  Here, by contrast, the mediation clause applies to "[a]ny dispute which arises from or is related to th[e Master] Agreement." (Emphasis added).  This broad language is akin to the clause at issue in Sourcing Unlimited, Inc. v. Asimco International, Inc., 526 F.3d 38, 41 (1st Cir. 2008), where we held that the plaintiff was equitably estopped from avoiding arbitration with defendants who were not signatories of a written arbitration agreement.  We relied, in part, on the breadth of the arbitration clause there, which covered "[a]ny action . . . arising out of, or relating in any way to, any of the provisions of this agreement."  Id. at 41, 48.  Likewise here, Fast Ferries did not "clearly and unambiguously" limit its consent to mediate issues only to the other contract signatory.  Hogan, 914 F.3d at 41.

Understanding the broad scope of the mediation and forum-selection clauses, we must still determine whether the claims against SeaTran are sufficiently intertwined with the Master Agreement.  In deciding whether claims are intertwined, courts have evaluated "the close relationship between the entities involved . . . and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations." Thomson-CSF, S.A., 64 F.3d at 779 (cleaned up) (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993), cert. denied, 513 U.S. 869 (1994)).  Successful "estoppel cases [have generally] involve[d] claims which are

integrally related to the contract containing the arbitration clause."  Id.  For example, in Sourcing Unlimited, Inc., the plaintiff contended its claims against the nonsignatory defendants arose out of a separate oral contract rather than a written agreement, which contained an arbitration clause.  526 F.3d at 47. However, we held that the dispute between the signatory and nonsignatory was "sufficiently intertwined" with the arbitration agreement for the purposes of equitable estoppel because resolution of the claims against the nonsignatory "require[d] reference to and [was] in part based on the underlying [written agreement]."  Id. at 47.[10]

A review of the facts demonstrates that the claims here are sufficiently intertwined such that Fast Ferries is equitably estopped from avoiding its burden under the mediation and forum-selection clauses with respect to SeaTran.  Fast Ferries insists that its claims against SeaTran fall outside the scope of the Master Agreement.  In doing so, Fast Ferries largely relies on simply stating that, even if the Master Agreement is enforceable,

---

[10] In Hogan, we held that the claims at issue were not sufficiently intertwined with the contract because the plaintiff's claims would exist in the absence of the contract.  914 F.3d at 42 ("Hogan's claims against [the nonsignatory] are premised upon Massachusetts wage and hour law, not the Master Agreement between [the signatories].").  In contrast with Hogan, Fast Ferries' primary claim, that defendants breached an agreement to charter M/V Mr. Cade, requires reference to the Master Agreement, the document that controls how Fast Ferries may properly charter the vessel.

SeaTran "is [neither] a party [to] nor a signatory [of] the Master Agreement." This overlooks the application of equitable estoppel and the interconnected nature of the claims against Mr. Cade, LLC and SeaTran. For its breach of contract claim, Fast Ferries alleged that it "contract[ed] with SeaTran and Mr. Cade[, LLC], through Miguez, to []charter the [vessel] Mr. Cade." And with respect to its culpa in contrahendo claim, Fast Ferries alleged that SeaTran and Mr. Cade, LLC acted in bad faith by withdrawing their purported agreement to recharter the vessel. These claims against SeaTran are necessarily intertwined with the Master Agreement because, as we have previously established, the Master Agreement was still in effect when Fast Ferries was conducting its most recent round of negotiating with the defendants-appellees and, together with any Short Form, governed the chartering of M/V Mr. Cade. See supra. Thus, any claims related to the chartering of M/V Mr. Cade are closely linked to the Master Agreement.

Although the district court did not explain its basis for dismissing the claims against SeaTran, the record establishes that Fast Ferries' claims derive from its effort to charter M/V Mr. Cade. This process was governed by the Master Agreement at the relevant time. Thus, Fast Ferries is equitably estopped from avoiding the mediation and forum-selection clauses with respect to SeaTran and dismissal was appropriate.

## IV. Conclusion

For the foregoing reasons, we conclude that the Master Agreement was in effect, and that SeaTran can enforce the Master Agreement's mediation and forum-selection clauses. Accordingly, the district court properly dismissed the verified complaint without prejudice. Therefore, we **affirm**.